UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. THOMAS HUBBARD, PhD, | |
| *Plaintiff*, | |
| v. | Case No. 1:20-cv-767 |
| SARAH ALLEN BLAKEMORE and JOHN DOES 1-10, | |
| *Defendants*. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
SARAH ALLEN BLAKEMORE'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Dr. Thomas Hubbard, PhD ("***Dr. Hubbard***" or "***Plaintiff***") and files his Response in Opposition ("***Response***") to Defendant Sarah Allen Blakemore's ("***Blakemore***" or "***Defendant***") Motion for Summary Judgment ("***MSJ***") and would respectfully show as follows:

**I.      PRELIMINARY STATEMENT**

Part of the tradition of Western civilization is to freely inquire regarding matters that some may find uncomfortable.  This tradition gave rise to the acceptance of the heliocentric universe, the theory of evolution, and tolerance of human sexuality.  Along the way, proponents of these progressive schools of thought were labeled by intolerant detractors as "heretics", "satanic", "degenerate", and "perverts".  Today, perhaps the most weaponized term to use against persons who question the wisdom of conventional mores is "pedophile".  Dr. Hubbard has fallen victim to this modern-day witch hunt.

Dr. Hubbard has devoted his life to the study of ancient Greece – the foundational civilization of the West. A precocious scholar, he received his PhD from Yale University at the age of only 23 and later taught the first ever course at the University of Texas at Austin (the "***University***") on homosexuality. One of the aspects of his classical studies is in relation to the inter-generational relationships between adult men and teenage boys in ancient Greece ("***Pederasty***"). Dr. Hubbard has published many works on this phenomenon and the role and function it played in ancient Greek society.

Based on his research and scholarship of the classical and contemporary worlds, Dr. Hubbard has also proposed some modest reforms to U.S. age of consent laws—primarily for boys—to be consistent with the laws of many developed countries and to end the disparate use of statutory rape laws to punish gay men. He has never proposed that age of consent laws be entirely repealed and has never suggested the legalization of pedophilia ("***Pedophilia***", sex involving prepubescent children). However, even the *very idea* that *any* age of consent laws should be examined and potentially reformed has caused Dr. Hubbard to draw the attention of the self-righteous mob.

One such "mobster" is Defendant Blakemore. As is clear from her publicly available social media profiles, she has lived a life of privilege and attention-seeking. Her Twitter profile says she doesn't "get out of bed for less than 18 karats".[1] She is involved in pageantry, bearing the title of "visiting jewel to the royal court".[2] Her Facebook page

---

[1] https://twitter.com/sarahablakemore/status/886701344509263872

[2] https://wslaustin.org/media-room/press-releases/womens-symphony-league-of-austin-hosts-jewel-tea/

shows she has a career in modeling.[3]   Likewise, her Instagram page is littered with narcissistic and sexualized images of herself.[4]

Her father, Allen Blakemore, a GOP political strategist, has been called the "Darth Vader" of Texas politics by the District Attorney of Harris County.[5]   At some point in the past year—apparently bored with seeking attention for shallow externalities—Blakemore decided follow in her father's footsteps and seek attention for herself as an activist.  She set her sights on Dr. Hubbard to launch a crusade based on completely fabricated claims that Dr. Hubbard promoted Pedophilia and violent—and to be sure, *law breaking*—sexual assaults against children.  The debutante became a dilettante.

Blakemore, who never attempted to engage in any discussion with Dr. Hubbard on the substance of his *actual* views, resorted to sensationalistic lies for her own attention-seeking purposes.  Although it is undisputed that Dr. Hubbard has never advocated or suggested that anyone break current laws and have sex with underage adolescents, Blakemore nevertheless made written and oral statements that claimed Dr. Hubbard "advocates for violent crime against teen boys" and "promotes breaking the law" (i.e., statutory rape).  Blakemore's lies stirred up a violent mob that vandalized Dr. Hubbard's home,[6] causing him to leave Austin.  This attack severely damaged his career, reputation, and health.  The man who devoted his life to giving a voice to the voiceless (even if he did

---

[3] https://www.facebook.com/sarah.blakemore.7798.

[4] https://www.instagram.com/sarah_blakemore/?hl=en

[5] https://harpers.org/archive/2017/03/texas-is-the-future/5/

[6] https://baltimoreoutloud.com/wp/anti-gay-hatefest-at-u-of-texas-austin/

not agree with them)[7] was silenced and made a refugee by a mob roused up by Blakemore's incendiary lies.

Blakemore's statements are clearly defamatory and actionable.  However, before discovery has even commenced in this case, Blakemore seeks an immediate summary judgment—relying primarily on the overruled case of *Ollman v. Evans*—on Dr. Hubbard's libel claims on the sole basis that all of Blakemore's complained of Statements are not assertions of fact, but rather are "opinions" and thus non-actionable.  Blakemore's arguments in the MSJ are based on bad law and are a completely unavailing waste of the Court's time.  Blakemore attempts to implore the Court's sympathy with the "I'm just an innocent student" ruse.  But the reality is that Blakemore chose to play an "adult game" in tarnishing Dr. Hubbard's dignity and reputation by falsely accusing him of advocating for the violent rape of children.  She must now and now must accept the "adult prize" of facing the consequences of her actions in a court of law.

## II.   PERTINENT FACTUAL BACKGROUND

On approximately November 21, 2019, Blakemore, and upon information and belief, acting in concert with John Does, authored and caused to be published the document attached as Exhibit A to the MSJ (the "***Flyer***"), which was circulated to multiple third parties in and around the campus of the University and ultimately nationwide via a Twitter list to which many faculty and students in the field of Classics subscribe, eliciting multiple hostile reactions to Dr. Hubbard within his professional field.  Doc. 4 at ¶¶ 6-7.  The Flyer is reproduced herein as follows:

---

[7] See Ex. B-1 (Dr. Hubbard clearly states he does not personally practice or advocate for pederasty or pedophilia, but seeks to understand the reasons behind those who do and to provide them a voice, rather than simply demonize them).

AUSTIN, TX - Dr. Thomas K. Hubbard has been advocating for pederasty (pedophilia) for as long as he has taught at the University of Texas. Since 2000, Dr. Hubbard has used his position to further a community of individuals hoping to prey on underage boys. In his academic writing, Hubbard describes physical relationships between men and young boys as "proper learning experiences." Works like "Boys' Sexuality and Age of Consent" encourage these illicit acts. His course "Mythology of Rape" was banned at UT after only one semester. Furthermore, Hubbard is heavily associated with the North American Man/Boy Love Association (NAMbLA), formerly the world's largest pedophile activist group. He is even on the list of associated individuals on the NAMbLA Wikipedia page.

We are calling for Dr. Thomas K. Hubbard's immediate removal from his position as a professor of the classics department at the University of Texas at Austin. An individual who advocates for violent crime against teen boys had no business teaching the leaders of tomorrow. It is clear to us that the University of Texas does not have its student's safety, health, and welfare in mind. Hubbard's misconduct has been brought to administration before to no avail. We refuse to stand by while this man uses his status to promote pedophilia.

It is our goal to make students aware of Hubbard's disgusting ideals even if the University of Texas protects him. It should be a student's choice whether to learn from a man with Hubbard's record.

Ex. A to MSJ. Afterward, in a December 4, 2019 news story in the *Austin American Statesman* (the "*Statesman*"), in reference to the controversy created by the Flyer, Blakemore was quoted as saying "after learning about" Dr. Hubbard's writings, "*I understand everyone has their own academic license, but I don't think it's appropriate for teachers at a public university to be promoting breaking the law.*" *See* https://www.statesman.com/news/20191204/austin-students-want-professor-fired-for-writings-on-age-of-consent-ut-says-itrsquos-protected-speech; Doc. 4 at ¶ 17 (together with the Flyer, the "***Statements***").

Based on the impressions conveyed expressly and/or impliedly through juxtaposition, context, and innuendo by the Statements, Plaintiff has brought suit against Blakemore for libel *per quod* and libel *per se*. Doc. 1 at Count I.

### III.    SUMMARY OF ARGUMENT

Blakemore seeks summary judgment on the sole ground that the Statements are expressions of protected opinion and are not statements of objectively verifiable fact. *See* MSJ at ¶¶ 4-5, 6, 43. There are no other grounds raised for summary judgment. *See generally id.* Accordingly, Dr. Hubbard need only show, when properly read in context from the standpoint of the ordinary reader, that the complained of Statements are statements of fact and not protected opinion either expressly or through implication. For the reasons discussed below, Blakemore's MSJ fails because it relies on overruled case law to tease out an "opinion" and at least some of the complained of Statements (and/or gists and impressions created by those Statements) are assertions of fact.

### IV.    ARGUMENT AND AUTHORITIES

#### A.  The Applicable Legal Standards

Under Texas law, a publication is capable of defamatory meaning if, in light of context and surrounding circumstances, "from the point of view it would have on the mind of ordinary readers," the publication tends to injure the reputation of a person or impeach any person's honesty, integrity, or virtue.[8] This determination is not made from the standpoint of the "careful reader" or the "literal reader", but from the viewpoint of the "man on the street's" ordinary and reasonable reading.[9] This hypothetical "person of ordinary intelligence" is one who exercises care and prudence, but not omniscience, when evaluating an allegedly defamatory communication.[10] If the complained of statements are

---

[8] *See Sellards v. Express-News Corp.*, 702 S.W.2d 677, 679 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); TEX. CIV. PRAC. & REM. CODE § 73.001.

[9] *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 119 (Tex. 2000) (citations omitted).

[10] *See New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004).

ambiguous, in that they may have a defamatory meaning, but are not necessarily defamatory, then the issue must be submitted to the jury and the trial court should not grant summary judgment.[11]

Accusations of corrupt mental state or motivations are actionable.[12] These statements cannot be insulated from liability by arguing they are categorically statements of opinion. For example, in *Gateway Logistics Group, Inc. v. Dangerous Goods Management Australia Pty, Ltd.* the court applied Texas law and held that the statements "in my opinion [plaintiff] has taken the art of lies & deception to a level almost beyond belief" and "our relationship with [plaintiff] has been terminated as a result of this greedy, deceitful, and very stupid plan" were libelous assertions of fact and not protected opinion.[13]

In distinguishing statements of fact from opinion, Texas courts have adopted the verifiability test in *Milkovich v. Lorain Journal Co.*[14] In *Milkovich*, the U.S. Supreme

---

[11] *See, e.g., Turner,* 38 S.W.3d at 117; *Sellards*, 702 S.W.2d at 679.

[12] *See, e.g., Bentley v. Bunton*, 94 S.W.3d 561, 581-82 (Tex. 2002) (holding that statement suggesting that plaintiff was "dishonest, unethical, shady, and unscrupulous" was reasonably capable of defamatory meaning); *Scripps NP Operating, LLC v. Carter,* 567 S.W.3d 1, 18 (Tex. App.—Corpus Christi 2016), order withdrawn (Jan. 18, 2019), aff'd, 573 S.W.3d 781 (Tex. 2019) (holding that that publications "taken together, clearly attempt to demonstrate that Carter acted improperly in his role as CEO of the Chamber by making false financial statements" motivated by a desire "to personally enrich himself…"); *see also Sellards*, 702 S.W.2d at 679.

[13] No. H–05–2742, 2008 WL 1883914 (S.D. Tex. Apr. 25, 2008).

[14] *See Bentley*, 94 S.W.3d 561, 579–85 (Tex. 2002) (adopting 497 U.S. 1, 21 (1990)). As alluded to above, Blakemore completely ignores *Milkovich* or *Bentley*, failing to cite them at all in her MSJ. *See generally* MSJ. Rather, Blakemore cites to the pre-*Milkovich* case from the D.C. Circuit of *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) and the pre-*Bentley* Texas appellate case following *Ollman* of *Yiamouyiannis v. Thompson*, 764 S.W.2d 338 (Tex. App.—San Antonio 1988, writ denied). The D.C. Circuit itself has recognized that *Ollman* has been overruled by *Milkovich* and it's "multi-factor" test relied on by Blakemore is no longer good law except possibly as it relates to "Op-Ed columns". *See Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 583, n.1 (D.C. 2000). Texas courts have expressly rejected application of *Ollman* in any sense and have held it reversible error employ the standard Blakemore asks of this Court. *See Pisharodi v. Barrash*, 116 S.W.3d 858, 862 (Tex. App.—Corpus Christi 2003, pet denied) ("In awarding summary judgment to Dr. Barrash, **the trial court relied on the four-part test of *Ollman v. Evans*. Such reliance was erroneous**.") (emphasis added). Blakemore's inexplicable reliance on overruled case law instead of the controlling legal standards underscores the frivolity of the MSJ. Her entire "analysis" under this overruled case in the MSJ at paragraphs 23-30 should be completely ignored.

Court held that the defendant's statement that the plaintiff committed perjury was "sufficiently factual to be susceptible of being proved true or false."[15]  *Milkovich* rejected an opinion/fact dichotomy that was proposed by the defendant in that case.[16]  Whether a statement is conveying actual facts about a person (overtly or impliedly) "depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements."[17]  The same is no less true when determining if the utterance is an actionable statement of fact or a constitutionally protected expression of opinion – it all depends on a reasonable person's perception of the entirety of a publication and its verifiability.[18]

### B.  The Reasonable Reading Of The Statements.

Applying the standards of *Milkovich* as implemented by Texas courts, the Court should first look to the entire context of the Statements.  The Flyer does not in any way convey that it is an "opinion" piece.  The words "opinion" or "in my view" or "I think" are nowhere to be found in the Flyer and are certainly not prefatory language to the relevant portions of the complained of Statements.  *See* Ex. A to MSJ.  In fact, the Flyer contains a sort of "dateline" at the top in the form of "AUSTIN, TX" as though it were a press release. *See id.*  There is simply no question that the ordinary reader of the Flyer would view it as conveying multiple actual facts regarding Dr. Hubbard.  The Flyer makes the following pertinent *express* factual claims regarding Dr. Hubbard:

---

[15] *Milkovich,* 497 U.S. at 21.

[16] *See id.* at 9-10, 19 (refusing to create "an artificial dichotomy between 'opinion' and fact" and rejecting that rationale from cases such as *Ollman*)

[17] *Bentley*, 94 S.W.3d at 571 (quoting *Turner v. KTRK TV., Inc.*, 38 S.W.3d 103 (Tex. 2000)).

[18] *Darby v. New York Times Co.*, 2014 WL 818614, at *5-6 (Tex. App.—Amarillo, Feb. 26, 2014, pet. denied) (citing *Bentley*, 94 S.W.3d at 582).

- Dr. Hubbard has, in fact, advocated for the practice of pederasty and pedophilia since he been at the University.

- Dr. Hubbard has written that illicit physical relationships between young boys and men are proper learning experiences in contemporary society in such works as "Boys' Sexuality and Age of Consent".

- One of Dr. Hubbard's courses at the University called "Mythology of Rape" was banned after only one semester.

- Dr. Hubbard advocates for violent criminal conduct against teenage boys.

- Hubbard has committed misconduct that has been brought to the University's attention.

In addition, the following are reasonable *impressions and gists* from the Flyer that the reasonable reader would form from reading it through the juxtaposition, context, and innuendo of the Statements in the Flyer:[19]

- Dr. Hubbard has, in fact, written pieces encouraging adult men to commit violent sexual assaults against teenage boys (including boys who are below the age of consent) that constitute crimes in contemporary society.

- Dr. Hubbard has, in fact, written pieces encouraging adult men to engage in physical relationships with teenage boys (including boys who are below the age of consent, Pederasty) and even pre-pubescent children (Pedophilia) in contemporary society.

---

[19] *See Turner*, 38 S.W.3d at 115-16 (following *Milkovich* and holding that a publication may convey a false and defamatory impression even if each individual statement, standing alone, is literally true if they are, through juxtaposition and omissions, presented in a misleading way).  Notably, in her MSJ, Blakemore entirely ignores any gists or impressions that Dr. Hubbard alleged were created by the Statements as a whole (*see* Doc. 1 at ¶ 19) and instead attempts to dissect every statement complained of in isolation (*see generally* MSJ) in contravention of Texas law as enunciated in *Turner*.

- One of Dr. Hubbard's courses at the University called "Mythology of Rape" was banned after only one semester because it consisted (at least in part) of Dr. Hubbard's advocacy for pederasty, pedophilia, and/or commissions of crimes against boys, which was "misconduct" that was brought to the University's attention, resulting in the banning of the course.

- Because Dr. Hubbard has used his teaching position at the University to "further a community of individuals hoping to prey on underage boys" (an example of which would be the now-banned "Mythology of Rape" course) by advocating for criminal conduct such as violent sexual assault and inappropriate relationships between adults and children in contemporary society, this has jeopardized the safety, health, and welfare of the students at the University.

In addition, all of these Statements are punctuated by Blakemore's statement in an interview with the *Statesman* during its coverage of the aftermath of Blakemore's Flyer, which clearly claims—expressly and impliedly—that Dr. Hubbard's writings promote breaking the law.[20]

As such, there is no question that Blakemore has made actual factual claims about Dr. Hubbard regarding the content of his writings, which, according to Blakemore contain the following content:  (1) Adult men are encouraged to commit violent sexual assaults

---

[20] A defendant can be held liable for the republication of a statement by someone else if a reasonable person would recognize that the defendant's actions created an unreasonable risk that the defamatory matter would be communicated to other parties.  *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 639–40 (Tex. App.—Houston [1ˢᵗ Dist.] 2002, no pet.); *Stephan v. Baylor Med. Ctr.*, 20 S.W.3d 880, 889 (Tex. App.—Dallas 2000, no pet.).  Here, Blakemore clearly understood that her Statements given in the interview with the *Statesman* would result in written republication to a broad audience, thereby making her liable for libel from these Statements.

and/or engage in physical relationships with adolescent boys or prepubescent children in contemporary society in such a way that breaks the law; (2) that such illicit acts can be "proper learning experiences" in contemporary society.  Moreover, Blakemore creates the impression that the ideas from Dr. Hubbard's writings (some of which encourage violent rape) made their way into the classroom at the University in a course called "Mythology of Rape", which was "banned" by the University after only one semester.

These are all readily and objectively verifiable facts.  A review of Dr. Hubbard's writings can easily demonstrate whether Dr. Hubbard has ever advocated for the violent sexual assault of teenage boys, whether he has encouraged anyone to break existing laws regarding the age of consent, and/or whether he has ever stated that sexual assaults and statutory rape as described above can be "proper learning experiences" in contemporary society.  In addition, a review of Dr. Hubbard's work would also reveal whether there are material facts that Blakemore omitted from her Statements, such as whether Dr. Hubbard has ever affirmatively disclosed that he does not condone or encourage the practice of pedophilia, pederasty, or the breaking of any existing laws in contemporary society.  These are not matters of opinion – they can be objectively verified.

Moreover, whether Dr. Hubbard's "Mythologies of Rape" (incorrectly referred to as "Mythology of Rape") course was "banned" by the University or whether it contained curriculum along the lines of the views and advocacy ascribed to Dr. Hubbard by the Statements is likewise a verifiable fact.  Records from the University, a course syllabus, etc. will easily prove or disprove these claims.  Accordingly, (as discussed in greater specificity below) the Statements complained of are statements of fact and not opinion and are thus actionable.

**C.  Blakemore Falsely Accused Dr. Hubbard Of Criminal Misconduct.**

Other than arguing that the Statements are opinions based on an "analysis" from an overruled case, most of the rest of the MSJ is devoted to bantering over the dichotomy of pederasty versus pedophilia and to what extent Dr. Hubbard has any relationship with NAMBLA (the now defunct North American Man/Boy Love Association), none of which is of primary relevance to the core of Dr. Hubbard's libel claims.  *See generally* MSJ. Shockingly, however, the most egregious accusations in Blakemore's Statements are almost entirely glossed over by the MSJ in an apparent attempt to distract the Court with peripheral issues.  Blakemore expressly claimed that Dr. Hubbard "advocates for violent crime against teen boys" and that, with reference to Dr. Hubbard's "academic license" and his writings, that he "promot[es] breaking the law".  *See* Ex. A to MSJ; https://www.statesman.com/news/20191204/austin-students-want-professor-fired-for-writings-on-age-of-consent-ut-says-itrsquos-protected-speech.    Blakemore's    MSJ, however, pays only a footnote tribute and a few sentences to these Statements.  *See* MSJ at n. 2, ¶ 22.

Blakemore's libelous Statements are on all fours with another Texas case that found equivalent statements to be actionable statements of fact and not protected opinion.  In *Darby v. New York Times Co.*, an anarchist who was accused of "encouraging" a bombing plot and had made many inflammatory statements regarding a bombing, including "I support you."[21]  In *Darby,* the court found that accusing the plaintiff of "encouraging" a bomb plot was defamation *per se* because it potentially accused the plaintiff of committing a criminal act since, under Texas law, a person is criminally responsible for an offense

---

[21] 2014 WL 818614, at *3-4, 6 (Tex. App.—Amarillo, Feb. 26, 2014, pet. denied).

committed by another where the former "**encourages** […] the other person to commit the offense."[22]

Here, Dr. Hubbard has been accused of using his position at the University and his writing to "promote" and "advocate" for a "community of individuals hoping to prey on underage boys" to commit violent sexual assaults and engage in sexual relationships with underage children, both of which Blakemore admits are "illicit", "criminal" and "breaking the law". There is no question that, under Texas law, sexual assaults and sexual relationships with underage children are crimes.[23] Blakemore's false claims that Dr. Hubbard "promoted" and "advocated" for the commissions of these crimes is colloquially indistinguishable from being accused of "encouraging" the crimes. In fact, on *dictionary.com*, the word "promote" is specifically listed as a synonym for "encourage" and vice versa.[24] As such, this case is indistinguishable from *Darby*.

And that indistinguishability does not turn on whether, taking Blakemore's false statements as true, Dr. Hubbard would have, in fact, been guilty of the crimes of encouraging others to commit sexual assault, statutory rape, and molestation. The point is that terms such as "encourage", "advocate", or "promote" are not so amorphous and vague so as not be objectively provable as true or false. If men and women can be imprisoned under Texas law based on a jury of their peers making a fact finding—under a "beyond a reasonable doubt" standard no less—that they "encouraged" the commission of crimes,

---

[22] *Id.* at *2 (construing and quoting Tex. Penal Code § 7.02(a)(2) (emphasis added)).

[23] *See* Tex. Penal Code § 21.001, *et seq.* (Sexual Crimes).

[24] https://www.dictionary.com/browse/encourage?s=t; https://www.dictionary.com/browse/promote?s=t

then surely Dr. Hubbard can sustain a defamation claim under a preponderance of the evidence standard where he has been falsely accused of such "encouragement".

And *Darby* is not an outlier. Other cases, in the spirit of *Milkovich*, have held that accusations similar to Blakemore's false claim that Dr. Hubbard's "hobby horse" is to encourage sexual assault and exploitation of minors are sufficiently factual to create defamation liability. In *Sharon v. Time, Inc.*, the court found that an accusation that the plaintiff "encouraged" a massacre was actionable as libel.[25] In *Bentley*, an accusation of "corruption" was sufficient to imply knowledge of undisclosed facts.[26] Here, there is no question that the Statements overtly and/or impliedly accuse Dr. Hubbard of having actually—in time and space—encouraged, promoted, and advocated for the commission of sex crimes either through his writings, his classroom teachings, or both. These are fact claims, they are defamatory, and they are false. They are not unverifiable opinions and the MSJ must be denied.

### D.  The MSJ Also Fails To Demonstrate Opinion On The Remaining Gists Of The Statements.

Although the gravamen of Dr. Hubbard's suit is that he was falsely accused of encouraging the commission of criminal sex crimes, other portions of the Statements are also defamatory and are also factual. As discussed above, the appropriate legal standard is to read the entire publications as a whole and—regardless of the truth of the individual statements—determine the gists that are expressly and impliedly conveyed to the

---

[25] 575 F. Supp. 1162, 1165, 1167-68 (S.D.N.Y. 1983) ("The line between fact and opinion is imprecise, but the present case raises no difficulties on this score. The alleged libel here is a statement of fact[.]").

[26] *See Bentley,* 94 S.W.3d at 581-84.

reasonable reader.[27]   The MSJ entirely ignores the gists created by context, innuendo, juxtaposition, and omissions pleaded in the Complaint and instead focus on each literal statement in isolation in an attempt to transmogrify Blakemore's "press release" into an Op-Ed piece.[28]

Instead, Blakemore makes the naked assertion that *"[t]he gist of Blakemore's flyer is that she finds the subject of Hubbard's scholarship objectionable and she therefore encourages others to join in calling for his removal from the University of Texas' faculty*." MSJ at ¶ 2.   As the Court can read for itself in the Statements (and as articulated above), this is like saying that the gist of *Mein Kampf* is that "Hitler finds the Jews of Europe objectionable and encourages others to join in calling for their removal."   Blakemore's infantilizing and minimizing of the venomous attack on Dr. Hubbard is so ridiculous that it does not even warrant a serious response.   Nonetheless, because Blakemore failed to even address the gists created by context and implication complained of by Dr. Hubbard in his Complaint, the MSJ fails to establish there are no complained of statements of fact and must be denied.

However, and in any event, the arguments advanced by Blakemore to transubstantiate her false factual assertions into opinions fail for the following reasons:

Blakemore first takes issue with Dr. Hubbard's claim that her Statements in the Flyer that he has been "*advocating for pederasty (pedophilia) for as long as he has taught at the University of Texas*."   Ex. A to MSJ; MSJ at ¶ 7.   This is clearly an objectively verifiable fact.   As pleaded in his Complaint—and unrebutted by any evidence from

---

[27] *See Turner*, 38 S.W.3d at 115-16.

[28] *Compare generally* <u>Doc. 1</u> at ¶ 19 *with* MSJ.

Blakemore—Dr. Hubbard first began teaching at the University in 1985 and did not even begin serious research or teaching related to the ancient Greek practice of pederasty until 1993.[29]  This is an objectively verifiable fact and while, standing alone, it may be only mildly defamatory, it is important to the context of the Statements and overall gist, which paint Dr. Hubbard as sociopathic pedophilic professor who has devoted his entire professorship and academic career to advancing the interest of sexual predators, which informs the tone of the entirety of the Statements.

Blakemore then goes on—as she curiously does throughout her MSJ as to other statements—to attempt prove that her Statements regarding Dr. Hubbard in this regard are, in fact, true.  MSJ at ¶ 8.  This is a strange move, however, because the basis of the MSJ is not that the Statements are true, but that they are opinions, which are incapable of being proven true or false.  This punctuates the conclusion that the Court should draw, which is that the Statements complained of are statements of fact and not opinion.

Nevertheless, her "proof" demonstrates the falsity of her Statements.  Exhibit B-1 to the MSJ—a YouTube video of Dr. Hubbard—clearly demonstrates that Dr. Hubbard takes the following positions:  (1) he does not personally practice or condone the practice of pederasty or pedophilia (Ex. B-1 to MSJ at 2:07 to 2:53); (2) he had made contact with and befriended certain members of NAMBLA to understand the reasons for their orientations and their motivations (*id.*); (3) he does not agree with NAMBLA's views and, in fact, strongly disagrees; in speaking to NAMBLA members, he emphasized that Pedophilia, as strictly defined in the field of psychiatry, did not have any place or practice in Ancient Greece (*id.* at 2:57 to 3:45); and (3) he believes that tenured faculty members

---

[29] Doc. 1 at ¶ 9.

of universities have a moral obligation to speak for those who have no voice, including the most reviled members of society, such as pedophiles, many of whom can be completely celibate and non-offending (*id.* at 8:10 to 9:53)).

From, this video excerpt—despite Dr. Hubbard specifically stating he does not practice, condone, or promote the practices of Pedophilia/Pederasty and does not agree with NAMBLA's views—Blakemore concludes that this proves that Dr. Hubbard is an "advocate" for Pedophilia.  MSJ at ¶ 8.  This is a patently absurd conclusion because it is like saying that a criminal defense attorney who speaks for the rights of a defendant charged with a crime thereby "advocates" for the commission of the crimes accused of, or a drug counsellor "advocates" for drug use.  Dr. Hubbard clearly states in the excerpt he disagrees with the practice, but seeks—as a scholar—to understand why those who have this orientation sometimes engage in conduct that our criminal justice system punishes severely.  No rational inference can result in the conclusion that Dr. Hubbard advocates for the practices of the people who he believes should have their voice heard so as to understand and, of course, control the behavior.

Blakemore then cites another of Hubbard's writings wherein he argues that policies and rationales that are used to justify the age of consent for girls should not apply to boys for reasons that Dr. Hubbard details based on social science and history.  MSJ at ¶ 9; Ex. C to MSJ at p. 3.  However, once again, this is pure conjecture.  How does arguing that boys and girls should be treated differently for purposes of age of consent constitute "advocating" for Pederasty?  Dr. Hubbard's writing (as can be gleaned from the entire context of Ex. C to the MSJ) is centered on the *harm* to young men that may result from restricting their abilities to obtain the full scope of manhood by restrictive laws that have

disparate effects on males and females.  *See* Ex. C.  This has nothing to do with gay men being able to prey on young boys as Blakemore suggests.  It is about the liberation of young men who have reached full sexual maturity for *their* benefit – not the benefit of people like the members of NAMBLA.  Blakemore—like a resident of 1600s Salem who thought they saw witchcraft—sees a sinister Pedophilic agenda everywhere in Dr. Hubbard's writings.

Finally, Blakemore concludes by arguing that Dr. Hubbard's writing celebrates Pederasty in Ancient Greece as "highly productive".  *See* MSJ at ¶¶ 9-10; Ex. C to MSJ. This is, again, a fabrication.  Dr. Hubbard does not say that Ancient Greek Pederasty was "highly productive", but rather that he examined contemporary age of consent laws and their underlying assumptions about boys against the Ancient Greeks' "highly productive social system **that incorporated specific social functions for male sexuality** (i.e., Pederastic relationships)".  Ex. C to MSJ at p. 3.  Dr. Hubbard characterizes the whole of Ancient Greece as a "highly productive social system" – not Pederastic relationships *per se*.

The fact that Pederastic relationships occurred in such a highly productive social system is an interest of Dr. Hubbard's scholarship.  This is made clear in the actual writing referenced by Ex. C to the MSJ "*Sexual Consent and the Adolescent Male, or What Can We Learn From The Greeks?*", which states that writings Blakemore relies on where Dr. Hubbard considers the Ancient Greeks to be the "ancestors of Western civilization and values" and were "a dynamic, creative, and successful society".  *See* Ex. F to MSJ at p. 1. The fact that our cultural ancestors had different views on adolescent male sexuality is the topic of Dr. Hubbard's scholarship at hand – not advocacy that it should occur now exactly

as it did then and certainly not justifying violation of any existing laws such as those against violent sexual assault.  *See* Exs. C and F to MSJ.

The rest of Blakemore's MSJ makes similar arguments that attempt to take Dr. Hubbard's writings out of context or outright misstate what they say.  For example, despite the fact that Dr. Hubbard has repeatedly stated that he does not agree with NAMBLA (Ex. B-1 to MSJ at 2:57 to 3:45; Ex. D to MSJ), is not in favor of repealing the age of consent laws entirely (Ex. E to MSJ at p. 4), and is not in any way associated with NAMBLA (Exs. D and E to MSJ).  The fact that Hubbard knows and has engaged in dialogue with NAMBLA members, been read by NAMBLA members, had one of his books distributed by NAMBLA, does not make him "heavily associated" with NAMBLA as Blakemore suggests.  Moreover, tellingly, despite the fact that Blakemore has obviously obtained copies of this book, there is no evidence presented that the book in question sought to advance a "NAMBLA agenda" or is otherwise consistent with Blakemore's false narrative.

Blakemore further draws an excerpt from another publication [Doc. 4-3 at pp. 5, 7] wherein Dr. Hubbard criticizes another scholar for his negative portrayal of the aspect of "Greek love" wherein adult men appreciated the beauty of the adolescent male form in what Dr. Hubbard viewed as a means to sanitize and homogenize gay culture to be on par with an "Ozzy and Harriet" type heterosexual culture.  MSJ at ¶¶ 14-15.  The fact that adult gay men may be attracted to the beauty of a teenage boy's body should not be controversial any more than adult heterosexual men being attracted to high school cheerleaders' bodies is controversial.  Controversial, rather, would be to encourage someone to act on such attraction and engage in a criminal sexual relationship with a sexually mature teenager.  Dr. Hubbard never does so nor advocates for this.  Even NAMBLA specifically admonishes

its members/visitors to its site not to break any existing laws and does not advocate they do so.  Ex. G to MSJ.

Finally, Blakemore claims that Dr. Hubbard's writing on certain positive aspects of Pederastic relationships in Ancient Greece translate into encouraging or promoting such relationships today.  *See* MSJ at ¶¶ 16-17.  At most, Dr. Hubbard uses the examples of Ancient Greece to ask the question whether, for boys, would a lower age of consent than that allowed by most U.S. jurisdictions really by harmful for them?  Dr. Hubbard merely says that "we must pose the question" as to whether to change the laws regarding age of consent for boys for the reasons he discusses.  Ex. F to MSJ at p. 7.  If posing this question is all it takes to justify being called an advocate for Pederasty, Pedophilia, violent sexual assaults against children, and for the breaking of existing laws—all under the guise of protected opinion—then the tort of defamation should simply be retired.

Blakemore misleads the Court on these issue and, in any event, disproves the conclusion sought by her MSJ – that these not provable assertions of fact.  They are.  And they are matters for trial and not summary judgment.  There is no legitimate argument that the meat of Dr. Hubbard's claim—that he was falsely accused of advocating for violent rape and the breaking of existing laws (which resulted in one his classes being "banned")— is in any way a matter of opinion or that such allegations are true.

## V.      CONCLUSION

Blakemore pretends that she is the one being silenced by this proceeding.  But the reality is that it is Dr. Hubbard who has been silenced by Blakemore's lies that caused physical violence to be directed at him.  Blakemore sought attention for herself by attacking a gay man who sought to understand a "reviled" segment of society from the standpoint of

the ancestors of Western civilization and to explore the human rights abuses suffered as a result of the disparate legislation and application of statutory rape laws against gay men. MSJ at Ex. E at p. 4.  Blakemore had a right to disagree with Dr. Hubbard.  She did not have a right to take a short-cut from rigorous and informed debate on the issues Dr. Hubbard has spent years studying and simply lie about him and his academic work for her moment in the sun.  Her MSJ should be denied in its entirety.

Respectfully submitted,

CAMARA & SIBLEY LLP

/s/ Joseph D. Sibley_____
Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
1108 Lavaca St
Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This is to certify that on this the 23rd day of September, 2020, a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record via ECF.

/s/ Joe Sibley_____
Joe Sibley