UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DR. THOMAS HUBBARD, PhD. § | | |
| *Plaintiff,* § | | |
| § | | |
| § | | |
| v. § | | CA NO. 1:20-cv-00767-RP |
| § | | |
| SARAH ALLEN BLAKEMORE; and § | | JURY DEMANDED |
| JOHN DOES 1 – 10, § | | |
| *Defendants*. § | | |

## Defendant Sarah Allen Blakemore's Reply to Plaintiff's Response to Motion for Summary Judgment

Sarah Allen Blakemore ("Defendant" or "Blakemore") files this Reply to Plaintiff's Response to Motion for Summary Judgment. In support, Blakemore would respectfully show the court as follows:

1. Hubbard's response offers this Court nothing from which to conclude that Ms. Blakemore's flyer contains defamatory statements of fact, as opposed to unverifiable opinions that are not actionable. The response contains little more than inaccurate interpretations of the law, misquoted citations from the flyer, unwarranted personal attacks on Ms. Blakemore, and a bizarre political smear against her father, a non-party[1].

2. Hubbard's assertion that *Milkovich* "overruled" *Ollman* is wrong as even a cursory analysis would have revealed[2] and *Ollman* is still cited frequently to this date, including by the

---

[1] One presumes Hubbard's response leads with the strongest argument; accordingly, Hubbard's character assassination on pp 2-3 reveals the frailty of his legal analysis.

[2] "The Court actually *endorsed* rather than rejected the essential substance of the previously existing constitutional protection for opinion. ... [S]tatements not subject to objective proof ... are still immune from liability under the First Amendment. ... [T]he rich body of jurisprudence developed by lower courts ... under the rubric of the 'opinion'

Texas Supreme Court.³ In *Milkovich* the Supreme Court recognized that there is not an independent privilege for statements of opinion, but "*Milkovich*'s rejection of the fact-versus-'opinion' dichotomy was largely semantic, as the Court recognized the 'provable as false' requirement that drove the 'opinion'-versus-fact analyses in *Buckley* and *Ollman*" and therefore "*Buckley*'s and *Ollman*'s analyses of whether the statements were provable as false are still most instructive and directly pertinent to assessing the still-valid constitutional requirement that a defamatory statement be provable as false." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1276 n.16 (M.D. Ala. 2019). Hubbard's false claim that *Ollman* was overruled is nothing but an aimless attack serving no more purpose than the craven assault against Ms. Blakemore's character ("mobster", "narcissistic", "shallow", "a debutante [who] became a dilettante").⁴

3. Hubbard's characterization of Ms. Blakemore as an "activist" *is* apt and fatally undermines his position. Merriam-Webster defines an 'activist' as someone who "<u>advocates</u> or practices 'activism'," which is in turn defined as a "doctrine or practices that emphasizes direct vigorous action especially in support of or opposition to <u>one side of a controversial issue</u>."⁵ (Emphasis added.) By attempting to slur Ms. Blakemore with the label "activist", what he has actually accomplished is admitting that she is an advocate on one side of a controversial issue—

---

doctrine remains alive and well." Rodney A. Smolla, *Law of Defamation* § 6:21 (2d ed. May 2019 update).

³ *See e.g. Dall. Morning News, Inc. v. Tatum,* 554 S.W.3d 614, 633 (Tex. 2018) (citing *Ollman* for the proposition that close judicial scrutiny is necessary in libel actions).

⁴ Despite having apparently studied Ms. Blakemore's social media profiles at some length for reasons that have absolutely no bearing on this case, Hubbard has also attempted to characterize her as a right-wing activist "following in her father's footsteps", conveniently ignoring the prominent endorsement of the Harris County Democratic Party on her Facebook page.

⁵ https://www.merriam-webster.com/dictionary/activism; https://www.merriam-webster.com/dictionary/activism

whether statutory rape laws serve to protect young boys—and he is an *advocate* on the other side of this issue—whether such statutory rape laws inhibit and impair the sexual freedom of teenage boys.

4. Ms. Blakemore's purpose in distributing the flyer was indeed to act as an activist expressing her fervently held and *subjective* opinions, which are *not* capable of verification and are therefore not defamatory under the *Ollman* analysis, under *Milkovich* or under any other articulation of the fundamental legal principle that "'statements that are not verifiable as false' are not defamatory." *Neely v. Wilson,* 418 S.W.3d 52, 61 (Tex. 2013) (citing *Milkovich*, 497 U.S. at 21-22). *Milkovich* "requires courts to focus not only 'on a statement's verifiability', but also on 'the entire context in which it was made' because "even when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it was made' discloses that it is merely an opinion. . ." and as such "the type of writing at issue, though not dispositive, must never cease to inform the reviewing court's analysis." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018). Hubbard's characterization of Ms. Blakemore as an "activist" is an acknowledgment that the flyer should be viewed in the context of young woman expressing her opinion that Hubbard's effusive praise of pederasty is harmful and *even if* Hubbard was capable of verifying that her interpretation of his work was somehow flawed, the expression of her opinions does not give rise to liability.

5. The "gist" of Ms. Blakemore's flyer is that in her opinion Hubbard's fixation on pederasty and acclamation of its benefits constitutes "advocacy" in support of a cause (legalizing statutory rape of young boys) that she considers harmful[6]. What constitutes "advocacy" will vary

---

[6] Hubbard's response confirms he is an advocate for pederasty: he "has proposed some modest reforms to U.S. age-of-consent laws—primarily for boys" to allow sexual relations between adults and adolescent boys. MSJ response at 2.

among individuals and is therefore the very type of subjective statement that is incapable of verification, although it is a reasonable conclusion supported by Hubbard's own words: "where age-discrepant relations are commonplace and <u>positively reinforced</u>, they cause little or no long-term harm to the younger partner and <u>often confer great benefit.</u>" MSJ **Exhibit F** at p. 4. (Emphasis added). In his Response, Hubbard admits that his writing "is centered on" what he considers "the *harm* to young men that may result from restricting their abilities to obtain the full scope of manhood by restrictive laws" and acknowledges he is "arguing that boys and girls should be treated differently for purposes of age of consent," yet disingenuously asks how his "argument" in favor of legalizing the statutory rape of young boys constitutes advocacy.

6. Ms. Blakemore's subjective assessment of Hubbard's stated position—that laws shielding young boys from sexual exploitation are harmful—is similar to subjective statements that courts throughout the country have held are not defamatory in cases with analogous fact-patterns analyzed under the same fundamental legal framework applicable here:

- Statements that an anti-abortion activist's actions "encourage, aid and abet those involved in arsons and bombings" was an expression of opinion and not actionable. *Scheidler v. NOW, Inc.,* 739 F. Supp. 1210, 1218 (N.D. Ill. 1990)

- Statements that a "strip club would promote sexual violence, prostitution, a larger burden on the area law enforcement officials, and will tear down and destroy families and individuals" were not provably false factual assertions because these statements are "not susceptible of being proved true or false", as a "prediction about a possible future event is an opinion, not a factual assertion; even if the predicted event does not come to pass, the prediction itself is not 'false' when made." *Harrington v. Hall Cty. Bd. of Supervisors*, No. 4:15-CV-3052, 2016 U.S. Dist. LEXIS 43541, at *26 (D. Neb. 2016)

- Labeling organization as a "'hate group' has a highly debatable and ambiguous meaning" and the "designation as such is not 'provable as false.'" *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019)

- Statements characterizing someone as "very crazy" and a "bad businessman" are subjective opinions that are not actionable as defamation, just as calling someone a "bully" is not actionable because "what constitutes being a bully, a bad businessman, or crazy is a judgment that will be vary among individuals and these expressions of opinion are therefore not actionable *Serian v. Penguin Grp. (USA), Inc.*, No. 1:08cv74, 2009 U.S. Dist. LEXIS 63677, at *24-25 (N.D.W. Va. 2009)

- Statement that beliefs were in line with the interests of Vietnamese communists was not actionable because it cannot be proven true or false. *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1009 (S.D. Tex. 2018)

7. Whether or not Hubbard "advocates" in favor of pederasty is a matter of opinion, just as it is a matter of opinion: whether someone is a "bully" (which Hubbard has revealed himself to be with his highly personal attacks on Ms. Blakemore and her family); whether someone's beliefs are in line with the interests of communists; and whether or not an organization promotes hate. Ms. Blakemore's opinion that Hubbard's questionable "scholarship" promotes pederasty is also an unverifiable expression of opinion (shared by others)[7], similar to the assertion that a strip club promotes sexual violence and prostitution or the assertion that an anti-abortion activist encourages violence by his peers. Ms. Blakemore has *not* stated that Hubbard has encouraged a specific act of sexual assault against a minor, but instead has only shared her opinion that his work has the potential to promote or encourage pederasty by the type of people exposed to it as a result of the distribution agreement he reached with NAMBLA.

8. Ms. Blakemore's general assertion that Hubbard's work "promotes" pederasty is much less damning than a statement by Geraldo Rivera that an anti-abortion activist was an "accomplice to murder" by virtue of having posted abortion providers' personal information online. *Horsely v. Rivera*, 292 F. 3d 695, 701 (11th Cir. 2002). However, even though Mr.

---

[7] "Hubbard's paper urging the unraveling of age-of-consent laws is a hard read, as slovenly in its scholarship as it is grotesque in its conclusions." MSJ at Ex. 8, "A UT professor 'researches' pederasty. Why are we paying for it?", *Dallas Morning News* Opinion, Dec. 18, 2019.

Rivera's statement was made within the context of a specific act of violence, it was held not actionable because it was protected as an "imaginative and figurative expression that could not have been taken by a reasonable viewer. . . as a literal assertion of facts." *Id*. No reasonable reader would conclude from the flyer that Hubbard is accused of encouraging a particular individual to molest a particular victim, but from the context could conclude only that the tenor of his work tends to try and legitimize or promote age-discrepant relationships which now are criminal.

9. In Ms. Blakemore's opinion, and in the opinion of most people, rape is violent; in Ms. Blakemore's opinion, an opinion shared by most people, minors do not have capacity to consent to sexual relationships with adults; and in Ms. Blakemore's opinion lowering the age of consent, as Hubbard has advocated, would expose children to violence[8]. Her statement that Hubbard is an "individual who advocates for violent crime" is an opinion expressed with rhetorical flourish. It is not a statement that anybody, when reading the flyer as a whole, would conclude literally means that Hubbard has acted as an accomplice to a specific violent act, just as Geraldo Rivera's characterization of an anti-abortion activist as an "accomplice to murder" was not held a literal and therefore defamatory statement of fact.

10. Hubbard asserts that the *Darby* decision, which involved an individual accused of encouraging the arsonist who burned the Texas Governor's mansion, is "indistinguishable" from the present case, once more evidencing a failure to properly read the case. The reporter in *Darby* was not "speaking of unverifiable fact or proffering vague rhetoric" but instead was "speaking of

---

[8] Non-consensual sex between an adult and a minor incapable of consent is no less violent than non-consensual sex because one of the "participants" is unconscious or drugged. Both are sexual assault, a second-degree felony punishable by up to 20 years imprisonment and a fine of $10.000. TEX. PEN. CODE §22.011(a)(2), (b)(3). See also *U.S. v. Alvarado-Hernandez*, 468 F.3d 188, 189-90 (5th Cir. 2006 (conviction for "consensual" sexual intercourse with 14-year-old victim under TEX. PEN. CODE §22.011(a)(2) met common-sense definition of crime of violence as well as generic, contemporary definition of statutory rape)

particular crimes and the identity of those to whom the crimes could be attributed" and the "scope of his attribution included Darby, and the identity of those engaged in specific crimes is verifiable fact. . ." *Darby v. N.Y. Times Co.*, No. 07-12-00193-CV, 2014 Tex. App. LEXIS 2197, at *11 (Tex. App.—Amarillo Feb. 26, 2014). No rational person could read the flyer and conclude Hubbard was being accused of being an accomplice to a specific act of rape; the rhetoric Ms. Blakemore employed unquestionably suggests only that she is critical of the academic tangent he has dragged her and other students down for decades because, in her opinion, his work promotes a controversial subject he was never tasked with teaching.

11. Hubbard has complained that he does *not* in fact view pederasty as a "proper learning experience," yet has devoted much of his academic career to this topic, much to the chagrin of the public university where he promotes his views. University of Texas at Austin President Gregory L. Fenves stated in a Letter to the Editor that under the American Association of University Professors' guidelines "'they should be careful not to introduce into their teaching controversial matter which has no relation to their subject."[9] President Fenves noted that for the last few years the "university has assigned Professor Hubbard to teach Classics courses that do not relate to the controversial topics in his writings" and noted that he is personally "disturbed by Hubbard's writings about sexual relations between teenagers and adults."

12. Ms. Blakemore has expressed her opinion, one shared by the university's president, that Hubbard is guilty of mission creep. Her opinion is again supported by Hubbard's own words. In the Introduction to Special Issue on "Boys' Sexuality and Age of Consent", Hubbard cites to an accomplished French philosopher, Michel Foucault, whose body of work discussing human sexuality Hubbard apparently hopes to build on with his own. MSJ **Exhibit C** at p. 2. Hubbard

---

[9] https://www.dallasnews.com/opinion/letters-to-the-editor/2019/12/20/ut-president-responds-to-dmn-on-professors-pedophilia-writings/

states that "boys' sexuality is clearly a field ripe for interdisciplinary dialogue" and toward that end he organized a group to explore the issue of "children's capacity to 'consent' to sexual intimacy and how it should be legally regulated." *Id.* He then refers to efforts to protect children from sexual exploitation as the "most brutal exercise of power." *Id.* Foucault was, and remains, a polarizing figure because of his stark discussion of human sexuality and Hubbard no doubt celebrates the opportunity to emulate this iconoclastic figure by promoting the "study" of age-discrepant relationships as a legitimate subject of scholarship, shoe-horning it into his position as a professor of Classics at a public university. Ms. Blakemore has called Hubbard out for refusing to adhere to the guidelines of his profession, emphasizing that instead of adhering to his role as a professor of Classics, he has misused his position to promote his own controversial ideas about the capacity of children to consent to sexual relationships with adults.

13. Any reasonable reader could conclude only that Ms. Blakemore is objecting to Hubbard's misuse of his position to promote a romanticized portrayal of historic practices, which he argues have relevance in modern times and should be considered within the context of enacting changes to age of consent laws. In a flyer filled with rhetorical flourish flagging it as an expression of opinion, Ms. Blakemore has expressed her opinion that Hubbard's advocacy for reforming age of consent laws is objectionable and, in her opinion, has the potential to promote harmful acts by those who may feel emboldened by Hubbard's legitimization of conduct that currently is illegal.

14. This Motion raises before this Court a legal issue: are these statements protected opinions? Nothing in Hubbard's response suggest they are anything but widely held opinions, so this Court should grant the Motion for Summary Judgment and dismiss this case.

Respectfully Submitted,

**HOOVER SLOVACEK LLP**

*//s// Colin L. Guy*
Colin L. Guy
Texas State Bar No. 24083118
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Tel: (713) 977-8686
Fax: (713) 977-5395
Email: guy@hooverslovacek.com

**WRIGHT & GREENHILL, P.C.**

*//s// Brantley Ross Pringle, Jr.*
Brantley Ross Pringle, Jr.
Texas State Bar No. 16330001
900 Congress Ave., Ste. 500
Austin, TX 78701
Tel: (512) 476-4600
Fax: (512) 476-5382
Email: rpringle@w-g.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of September 2020, a copy of Defendant's Reply was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney of record:

Joseph D. Sibley
sibley@camarasibley.com
CAMARA & SIBLEY LLP
1108 Lavaca St
Suite 110263
Austin, TX 78701

**ATTORNEYS FOR PLAINTIFF**

*//s// Colin L. Guy*
Colin L. Guy