UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DR. THOMAS HUBBARD, PhD.<br>　*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | CA NO. 1:20-cv-00767-RP |
| SARAH ALLEN BLAKEMORE; and<br>JOHN DOES 1 – 10,<br>　*Defendants*. | §<br>§<br>§<br>§ | JURY DEMANDED |

## Defendant Sarah Allen Blakemore's Motion for Leave to Supplement Defendant's Motion for Summary Judgment

Sarah Allen Blakemore ("Defendant" or "Blakemore") files this Motion for Leave to Supplement Defendant's Motion for Summary Judgment. In support, Blakemore would respectfully show the court as follows:

1.　Blakemore has discovered new evidence that came to light following the filing of the Motion for Summary Judgment that further supports her position that the statements at issue in the flyer are well-reasoned opinions and not actionable under defamation. Hubbard has complained that he has been unfairly characterized in the flyer as an advocate for pederasty and pederasts, but has admitted as much in a letter written to a fellow professor of classics that was authored after the Motion for Summary Judgment was filed. Blakemore therefore requests this Court grant leave to allow this motion to be included in supplementation to the pending Motion for Summary Judgment and allow the attached exhibit to be included as Exhibit I. This Court is authorized under Fed. R. Civ. P. 56(f) to grant summary judgment independent of the motion and is therefore authorized to grant the requested supplementation.

2.　Blakemore filed her Motion for Summary Judgment on September 9, 2020. Hubbard filed his response on September 23, 2020 and Blakemore's reply was filed September 30, 2020. On

October 7, 2020, Hubbard sent a letter on University of Texas at Austin letterhead to Prof. Liv Yarrow, an Associate Professor of Classics at Brooklyn College and the Graduate Center of the City University of New York.

3.      In this letter, Hubbard came to the defense of the "documented pedophiles" featured in a critical blog post by Prof. Yarrow[1], taking great umbrage to Prof. Yarrow's attempt to draw attention to scholars in their field who have been convicted of sexual offenses involving minors. For purposes of context, Prof. Yarrow explained in her blog entry that she had been removing translations and materials written by controversial figures from her sexuality and gender class so that her students would not feel compelled to "read about child sex in the ancient world from those either convicted of child sex crimes" or who are alleged to "dispute the need for laws that seek to protect children from such crimes." She also noted that Hubbard is involved in the present controversy and that he is on record as believing that "child-sex (or at least boy-sex) should be decriminalized", but in his response Hubbard did not limit himself to defending his own reputation and instead devoted several pages to protecting his peers from what he perceived as an unfair attack notwithstanding their convictions for sexual offenses involving minors.

4.      This blog entry and Hubbard's response are significant for many reasons relevant to the pending Motion for Summary Judgment. His histrionics in response to Prof. Yarrow identifying convicted pedophiles is telling, in that this sort of behavior is precisely what informed Blakemore's opinions when she concluded that, in her opinion, he is an apologist for pedophiles. In defense of Andrew Dyck, a UCLA classics professor who *pleaded guilty* after sending pornographic images and engaging in sexual exchanges over the internet with a 13-year-old, Hubbard speculated that

---

[1] The blog entry was revised following an extortionate demand by Hubbard, who threatened to include her in this lawsuit along with the still yet-to-be identified "John Does" if she did not yield to his demands. The revised version is available at https://livyarrow.org/2020/09/29/on-controversies-and-classics/.

the conversation with this child did not turn sexual "before a police *agent provocateur* began impersonating [the minor] and leading [Dyck] on." On the subject of his colleagues who were convicted of possessing child pornography, Hubbard defended their possession of these illegal images by arguing that "there is no causal connection between possession of these images and commission of actual illegal acts upon children" and proceeded to argue at length that access to child pornography actually *reduces* harm to children.

5.      Hubbard's full-throated defense of these convicted sex offenders is consistent with the troubling material in his writings and lectures that contributed to the development of Blakemore's opinions that he is an advocate for men who engage in sexual conversations with minors and posses child pornography. In the letter, Hubbard admits as much. He states that his "interest has also been influenced by <u>my social justice activism on behalf of GLBTQ prisoners</u>" which he describes as victims of "disproportionate enforcement of statutory rape laws, especially in cases involving consensual relationships with teenagers. . ." In other words, he is literally an advocate on behalf of men convicted of having sex with minors, i.e. an advocate for pederasts. Hubbard concludes his letter by urging Prof. Yarrow to "leave the social justice activism to those of us who actually know what we are talking about and are working in tangible ways to reduce the harm done to our communities by paternalistic/patriarchal legal codes and a hypertrophied carceral state."

6.      This letter is therefore significant in that it further demonstrates that Blakemore's characterization of Hubbard as an advocate for pederasty is an opinion informed by his own admitted advocacy on behalf of pederasts. It is doubly significant in that this dispute with a fellow professor of Classics reveals that Blakemore is not alone in developing these opinions and they are just that—opinions.

7.      As previously mentioned, Prof. Yarrow's blog post was an extension of a process of culling from her curriculum objectionable scholars whose work, irrespective of any scholarly merit it may possess, she did not wish to force upon her students due to the deplorable conduct of its authors. It was no accident that Prof. Yarrow happened to mention Hubbard and the present controversy in this blog post. Her reference to Hubbard can be read as an indictment of his fetishistic fixation on Greek pederasty, a subject he exposes his students to even though it is outside the scope of what he has been tasked with teaching. That is not to say that this subject-matter is itself objectionable if presented by a neutral scholar, but in Blakemore's opinion, based on her review of Hubbard's writings and her direct experience with him, he is not merely teaching about practices in antiquity but is advocating that those practices should be permitted in the present through revision of statutory rape laws. The fact that one of Hubbard's peers in academia has expressed her own concerns about Hubbard and his crusade against statutory rape laws further emphasizes that this is a controversial subject upon which different individuals will draw different conclusions and that it falls therefore within the realm of opinion rather than fact. In Blakemore's opinion, Hubbard's conduct qualifies him as an advocate in support of eliminating laws that protect children from sexual abuse and it appears this is an opinion shared by other classical professors and not just what Hubbard considers nothing more than a naïve and "privileged sorority girl and aspiring model."

8.      Fed. R. Civ. P. 56(f) provides that "after giving notice and a reasonable time to respond," the Court may grant summary judgment independent of the motion. The Court is therefore fully authorized to consider the letter to Prof. Yarrow in supplementation to the previously submitted summary judgment exhibits and may grant summary judgment with the benefit of this additional evidence. Blakemore therefore respectfully requests this Court grant leave to include this newly discovered evidence in the summary judgment record, incorporate this motion into the Motion for

Summary Judgment, and afford Hubbard a reasonable opportunity to respond after notice has been provided that this supplemental exhibit will be accepted as Exhibit I to Blakemore's Motion for Summary Judgment.

        Respectfully Submitted,

**HOOVER SLOVACEK LLP**

By: //s// *Colin L. Guy*
    Colin L. Guy
    Texas State Bar No. 24083118
    Galleria Tower II
    5051 Westheimer, Suite 1200
    Houston, Texas 77056
    Tel: (713) 977-8686
    Fax: (713) 977-5395
    Email: guy@hooverslovacek.com

**WRIGHT & GREENHILL, P.C.**

By: //s// *Ross Pringle, Jr. (w/permission)*
    Ross Pringle, Jr.
    Texas State Bar No. 16330001
    900 Congress Ave., Ste. 500
    Austin, TX 78701
    Tel: (512) 476-4600
    Fax: (512) 476-5382
    Email: rpringle@w-g.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this <u>21st</u> day of October 2020, a true and correct copy has been electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney of record:

Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEY FOR PLAINTIFF**

                                                                                   By: <u>*//s// Colin L. Guy*</u>
                                                                                          Colin L. Guy