UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. THOMAS HUBBARD, PhD, <br><br> *Plaintiff*, <br><br> v. <br><br> SARAH ALLEN BLAKEMORE and JOHN DOES 1-10, <br><br> *Defendants*. | Case No. 1:20-cv-767-RP |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
SUPPLEMENTAL SUMMARY JUDGMENT EVIDENCE**

COMES NOW Dr. Thomas Hubbard, PhD ("***Dr. Hubbard***" or "***Plaintiff***") and files his Response ("***Response***") to Defendant Sarah Allen Blakemore's ("***Blakemore***" or "***Defendant***") Supplemental Summary Judgment Evidence [Doc. 30] to her Motion for Summary Judgment ("***MSJ***") [Doc. 8] and would respectfully show as follows:

### I.   RESPONSE

Blakemore's MSJ is based on the exclusive grounds that the statements in the Flyer and the *Statesman* that form the basis of Plaintiff's claims were statements of opinion and not of fact.  See Doc. 8 at ¶¶ 4-5, 6, 43.  For the reasons already briefed in the Response [Doc. 9], this is not true and the MSJ should be denied.  Blakemore's supplemental evidence [Doc. 30], a letter from October 2020 (the "***Letter***"), does nothing to change this conclusion either on the issue of opinion or on the issue of truth, which is not even raised in the MSJ.

First, the opinion test is whether a statement is conveying actual facts about a person and "depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements."[1]  The supplemental evidence is a letter that Dr. Hubbard sent—long after the events in question and after this lawsuit was filed—to a third-party. The opinion test is whether a statement is conveying actual facts about a person and "depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements."[2]  Whether Blakemore's own statements are opinions or fact is determined by her statements themselves and not on extraneous evidence or Dr. Hubbard's statements.  In short, a letter from Dr. Hubbard in October 2020 does absolutely nothing to prove whether Blakemore's Flyer and statements in November 2019 were statements of fact or opinion.  As such, this does nothing to change the fact that the MSJ should be denied.

Second, to the extent the Court were to entertain an additional argument—though it would be inappropriate since the argument was not raised in the MSJ—that the supplemental evidence proves Blakemore's statements were substantially true, this would likewise fail.  As a reminder (and as detailed in the MSJ Response [Doc. 9] at pp. 8-10), the statements/gists from the Flyer and the *Statesman* were as follows:

The Flyer makes the following pertinent *express* factual claims regarding Dr. Hubbard:

- Dr. Hubbard has, in fact, advocated for the practice of pederasty and pedophilia since he been at the University.

---

[1] *Turner v. KTRK TV., Inc.*, 38 S.W.3d 103 (Tex. 2000)).

[2] *Id*.

- Dr. Hubbard has written that illicit physical relationships between young boys and men are proper learning experiences in contemporary society in such works as "Boys' Sexuality and Age of Consent".

- One of Dr. Hubbard's courses at the University called "Mythology of Rape" was banned after only one semester.

- Dr. Hubbard advocates for violent criminal conduct against teenage boys.

- Dr. Hubbard has committed misconduct that has been brought to the University's attention.

In addition, the following are reasonable *impressions and gists* from the Flyer that the reasonable reader would form from reading it through the juxtaposition, context, and innuendo of the Statements in the Flyer:[3]

- Dr. Hubbard has, in fact, written pieces encouraging adult men to commit violent sexual assaults against teenage boys (including boys who are below the age of consent) that constitute crimes in contemporary society.

- Dr. Hubbard has, in fact, written pieces encouraging adult men to engage in physical relationships with teenage boys (including boys who are below the age of consent, Pederasty) and even pre-pubescent children (Pedophilia) in contemporary society.

- One of Dr. Hubbard's courses at the University called "Mythology of Rape" was banned after only one semester because it consisted (at least in part) of

---

[3] *See Turner*, 38 S.W.3d at 115-16 (following *Milkovich* and holding that a publication may convey a false and defamatory impression even if each individual statement, standing alone, is literally true if they are, through juxtaposition and omissions, presented in a misleading way). Notably, in her MSJ, Blakemore entirely ignores any gists or impressions that Dr. Hubbard alleged were created by the Statements as a whole (*see* Doc. 1 at ¶ 19) and instead attempts to dissect every statement complained of in isolation (*see generally* MSJ) in contravention of Texas law as enunciated in *Turner*.

> Dr. Hubbard's advocacy for pederasty, pedophilia, and/or commissions of crimes against boys, which was "misconduct" that was brought to the University's attention, resulting in the banning of the course.

- Because Dr. Hubbard has used his teaching position at the University to "further a community of individuals hoping to prey on underage boys" (an example of which would be the now-banned "Mythology of Rape" course) by advocating for criminal conduct such as violent sexual assault and inappropriate relationships between adults and children in contemporary society, this has jeopardized the safety, health, and welfare of the students at the University.

In addition, all of these Statements are punctuated by Blakemore's statement in an interview with the *Statesman* during its coverage of the aftermath of Blakemore's Flyer, which clearly claims—expressly and impliedly—that Dr. Hubbard's writings promote breaking the law.[4]

In all defamation cases, courts use the "substantial truth" test to determine whether a statement was false.[5] Under this test, a statement is not considered false unless it would have a different effect on the mind of the average listener than a true statement would.[6]

---

[4] A defendant can be held liable for the republication of a statement by someone else if a reasonable person would recognize that the defendant's actions created an unreasonable risk that the defamatory matter would be communicated to other parties. *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 639–40 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Stephan v. Baylor Med. Ctr.*, 20 S.W.3d 880, 889 (Tex. App.—Dallas 2000, no pet.). Here, Blakemore clearly understood that her Statements given in the interview with the *Statesman* would result in written republication to a broad audience, thereby making her liable for libel from these Statements.

[5] *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

[6] *See Masson*, 501 U.S. at 517.

Substantial truth is evaluated by looking at the gist of the publication.[7]  If the publication correctly conveys the gist but is incorrect about some non-essential details, the publication will be considered substantially true.[8]  If the publication was correct in the details but got the gist of the story wrong by omitting material facts or juxtaposing facts in a misleading way, the publication will be considered false.[9]

No reasonable person of even minimal intelligence could review the Letter and conclude "Eureka – Blakemore was right!"  The Letter [Doc. 30] is an attempt by Hubbard to rectify the same kind of false misinformation spread by Blakemore that Hubbard is a pedophile.  Blakemore's false claims were apparently repeated by the recipient of the Letter, Liv Yarrow ("*Yarrow*") who had authored a blog about Dr. Hubbard and other men.  In the Letter, Dr. Hubbard takes issue with the fact that Yarrow has accused he and other men of pedophilia.  With respect to accusations lodged at some men for alleged possession of images, Dr. Hubbard says he "in no way defend[s]" the creation of sharing of child pornography but adds that he—as a civil libertarian—is concerned about the misuse of anti-pornography laws to stifle legitimate art or anthropological records.  He also refers to the purported pornographic images allegedly collected by one of the men Yarrow accuses as a pedophile as "garbage".

Hubbard takes issue with whether these men should—as a scientific term of art—be considered "pedophiles" (*e.g.*, "Not a single one of these men can legitimately be called a 'documented pedophile'").  He also vehemently denies the false assertion that he believes adult-child sex should be decriminalized and reiterates his scholarly positions on revisiting

---

[7] *See, e.g., Neely v. Wilson,* 418 S.W.3d 52, 63-64 (Tex. 2013).

[8] *See Turner*, 38 S.W.3d at 115.

[9] *See Neely,* 418 S.W.3d at 64.

the age of consent for boys to be on par with that of most of the rest of the Western World and his calls for criminal justice reform.  However, in the Letter, he does not in any way, justify, condone, or advocate for the commission of the behaviors these men are accused of by Yarrow.  The Letter does nothing more than take issue with some of Yarrow's accusations and conclusions on the topic of pedophilia and her "speculation" as to the motivations of some of the men discussed.  Nothing in the Letter can reasonably be construed as an admission that Dr. Hubbard is a "advocate" for the commission of pederasty or pedophilia.  The Letter is a red herring and if this is the best evidence Blakemore has to prove the "substantial truth" of her statements, the defense is completely frivolous.

## II.     CONCLUSION

Blakemore accused Dr. Hubbard of encouraging and advocating for the commission of violent sexual assaults, the commissions of criminal activity, as well as the commission of pedophilia/pederasty, among other things as discussed above.  These are accusations of objectively verifiable fact—not opinion—and the Letter does not alter that analysis.  At most, the Letter demonstrates that Dr. Hubbard has engaged in scholarly debate about what should be considered pedophilia/pederasty and whether certain laws, as written, constitute good jurisprudence.  The Letter clearly condemns child pornography, the repeal of age of consent laws, and in no way attempts to justify breaking the existing laws or encourages child rape.  The Letter does not make Dr. Hubbard an "advocate" for pederasty/pedophilia any more than a criminal defense attorney who calls for criminal justice reform makes that attorney and "advocate for the commission of violent crime".  Any reading of the Letter to render Blakemore's statements "substantially true" would be

patently unreasonable and ludicrous and the fact that Blakemore has suggested as much underscores the weakness and frivolity of her defense.  The MSJ should be denied in its entirety.

                                        Respectfully submitted,

                                        CAMARA & SIBLEY LLP

                                        /s/ Joseph D. Sibley
                                        Joseph D. Sibley
                                        State Bar No. 24047203
                                        sibley@camarasibley.com
                                        Camara & Sibley LLP
                                        1108 Lavaca St
                                        Suite 110263
                                        Austin, TX 78701
                                        Telephone: (713) 966-6789
                                        Fax: (713) 583-1131

                                        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this the 15th day of April, 2021, a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record via ECF.

                                        /s/ Joe Sibley
                                        Joe Sibley