# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered between Dr. Thomas K. Hubbard ("Hubbard") and The University of Texas at Austin ("UT"), on July 5, 2021 ("Effective Date").

# RECITALS

WHEREAS, there are currently numerous pending disputes or controversies involving Hubbard, a tenured faculty member, and his employer, UT;

WHEREAS, Hubbard has brought claims of employment discrimination against UT in a cross-filed Charge of Discrimination (451-2020-0355N) filed and pending before the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") (the "Charge");

WHEREAS, Hubbard has a faculty grievance pursuant to Handbook of Operating Procedures 2-2310 pending against his supervisor ("Faculty Grievance");

WHEREAS, Hubbard has three lawsuits pending in federal court against current and/or former UT students—Sarah Allen Blakemore (1:20-cv-767-RP); Hollie Green (1:20-cv-1140-RP); and Zoe Elise Thomas (1:20-cv-1193-RP) (the "Federal Lawsuits");

WHEREAS, Hubbard maintains that the Federal Lawsuits are supported by the relevant evidence;

WHEREAS, Hubbard has sought third-party discovery from UT in the Federal Lawsuits and has indicated that, if needed, further discovery may be sought from UT in the future;

WHEREAS, Hubbard alleges that UT is liable to him for claims arising from his employment with UT, which UT disputes;

WHEREAS, Hubbard's teachings and writings have been reviewed and have been found not to have violated any applicable standards;

WHEREAS, there have been no findings that Hubbard has engaged in any improper sexual conduct;

WHEREAS, UT asserts that its actions were at all times lawful, which Hubbard disputes;

WHEREAS, without any admission of liability or wrongdoing, UT and Hubbard wish to resolve their disputes and controversies;

WHEREAS, it is expressly agreed and understood that nothing herein contained shall be contended, interpreted, or construed to be an admission of liability on the part of UT or Hubbard, or any implication or concession that the Federal Lawsuits lack merit;

WHEREAS, UT is entering into this Settlement Agreement (the "Agreement") solely to avoid the cost of likely litigation and to avoid the expenditure of future time and money managing the various other disputes;

WHEREAS, UT has determined that this Agreement is in its best long-term interest and serves a public purpose;

WHEREAS, Hubbard agrees that, consistent with the provisions herein, he will release UT and file motions to dismiss the Federal Lawsuits in exchange for the valuable, adequate consideration listed below, not for any other reason; and

NOW, THEREFORE, the Parties memorialize their agreement in writing, as follows:

## AGREEMENT

1. **Definitions**

As used in this Agreement and the annexed exhibits (which are an integral part of this Agreement and are incorporated into this Agreement in their entirety and by reference), the terms below have the following meanings, unless a part of or subpart of this Agreement or its exhibits otherwise provides. All other capitalized terms used in this Agreement but not defined in this section shall have the meaning ascribed to them in this Agreement and the exhibits annexed hereto:

a. "Agreement" means this Settlement Agreement together with all exhibits hereto.

b. "Parties" means Hubbard and UT.

c. "Hubbard" means Thomas K. Hubbard and his representatives, heirs, assigns, successors or predecessors, agents, and principals.

d. "UT" means The University of Texas at Austin; The University of Texas System; the Board of Regents of The University of Texas System; and each of the aforementioned entities' affiliated representatives, officers or directors, employees, agents, principals, insurers and attorneys.

e.    "Hubbard's Counsel" means Sherrard "Butch" Hayes and Rachel Mathisen of Weisbart Springer Hayes LLP.

f.    "UT Students" means Sarah Allen Blakemore, Hollie Green, Zoe Elise Thomas, and John Does.

g.    "Claims" means any and all theories of liability or recovery of whatever nature, whether known or unknown that were or could have been the subject of any complaint or charge filed or proceeding initiated with any court or other governmental agency or body of the United States of America or any other country, or any state or local jurisdiction within the United States of America or any other country, or of any lawsuit or similar proceeding and which relate to or arise from Hubbard's employment with UT or any actions or inactions by UT, as of the Effective Date, including the Charge, the Faculty Grievance, and all Claims that were or could have been brought against UT in connection with the currently pending Federal Lawsuits (1:20-cv-767-RP; 1:20-cv-1140-RP; and 1:20-cv-1193-RP), whether known or unknown to Hubbard at the time of execution of this Agreement. The term "Claims" excludes any future claims that arises or accrues after the Effective Date.

h.    "Damages" means any and all damages and other elements of relief of recovery of whatever nature, whether known or now unknown, including all monetary remedies, including actual, compensatory, liquidated, incidental, indirect, consequential, exemplary and punitive damages; rescission; attorneys' fees; interest; costs; equitable relief; reinstatement; declaratory and/or injunctive relief; and expenses that could be awarded in connection with any Claim.

## 2.   **Consideration**

Hubbard shall retire from UT effective twenty-one (21) days from the Effective Date. Such retirement shall entitle him to all rights and benefits offered to all other retired professor—specifically including, but not limited to, any retirement benefits and medical benefits he is entitled to from the Teacher Retirement System of Texas. Hubbard agrees to arrange to have his personal items removed from his office on campus before the effective date of his retirement, with the reasonable assistance of UT.

Hubbard will not have or use an emeritus title in retirement and will not hold himself out as a member of the UT faculty once retired.

Hubbard will continue to have access to and use of a personal UT email address as is customary for all retired professors, provided however Hubbard may not identify himself as employed by or affiliated with UT. He may identify himself as appropriate in his signature block or otherwise as a former professor. During the fifteen (15) days following the execution of this Agreement, Hubbard and UT will work in good faith with UT's Information Security Office to transition Hubbard's current business email address to a personal email account.

Hubbard shall have full online access to library resources for five years from the date of retirement. During the fifteen (15) days following the execution of this Agreement, Hubbard and UT will work in good faith with all the necessary departments to ensure Hubbard is granted this access.

Hubbard will be subject to all standard UT policies related to email and library use and the terms of this Agreement, including, but not limited to, UT-Information Resources Use and Security Policy, and the Standard Acceptable Use of Information Resources. Hubbard acknowledges that his use of the email platform and his digital library access makes him a "User" of "University Information Resources" under the applicable policy. Hubbard further acknowledges that violation of UT policies related to email and library use, or this Agreement, may result in immediate loss, revocation, or suspension of these privileges.

3.   **Release**

Within five (5) days of Hubbard's Counsel receiving the Payment identified below, Hubbard shall request withdrawal of his Charge of Discrimination (451-2020-0355N) filed with the Equal Employment Opportunity Commission and Texas Work Force Commission as well as his pending Faculty Grievance. These efforts shall include, but are not limited to, him sending the letter attached hereto as Exhibit A to the EEOC and TWC as well as sending an email to ratiase@mail.utexas.edu (Chair of Grievance Committee, Rowland Atiase) and fc@austin.utexas.edu (Office of the General Faculty) requesting to withdraw the Faculty Grievance. The withdrawals of the Charge of Discrimination and Faculty Grievance shall be with prejudice.

The Parties mutually release each other from all Claims and Damages arising from Hubbard's employment with UT or any actions or inactions by UT, existing as of the Effective Date. This includes, but is not limited to, Hubbard releasing UT and its employees from any and all Claims and Damages, whether based on federal, state or local statute, ordinance, regulation, contract, common law, equity, or any other source (including, without limitation, any Claims or causes of action that may be created or recognized after the Effective Date and any Claims under the laws of any country or international association of any kind), that have been, could have been, may be, or could be alleged or asserted now by Hubbard against UT. For clarity, Claims and Damages shall not mean costs and fees associated with any of the Federal Lawsuits.  Hubbard further agrees that he will defend, indemnify, and hold harmless

*In Re Thomas K. Hubbard*                                                     Page 4 of 11

UT for any liability of any kind related in any manner whatsoever to any released Claim, to the extent that such liability is the result of a proceeding initiated by Hubbard following the execution of this Release. Hubbard acknowledges and agrees that because he is waiving Claims and rights to Damages as provided herein, he cannot and will not seek or accept any personal benefit from UT, whether in monetary or other form, as part of or related to any proceeding initiated by any other person or governmental body of the United States or any other jurisdiction.

The Parties intend this release to be full and final mutual releases of Claims and Damages for matters that have accrued through the Effective Date. The Parties do not release future claims that have not yet accrued as of the Effective Date.

Within five (5) days of Hubbard's Counsel receiving the lump sum payment identified below, Hubbard shall file a motion to dismiss with prejudice (and all sides bearing their own costs and fees) his pending Federal Lawsuits against Sarah Allan Blakemore and various John Does (1:20-cv-767-RP); Hollie Green (1:20-cv-1140-RP), and Zoe Elise Thomas (1:20-cv-1193-RP). On that date, Hubbard shall file, and not revoke, a motion to voluntarily dismiss the Federal Lawsuits, and a proposed order, to affect the same, with prejudice. Hubbard shall take any and all other steps reasonably necessary to dismiss the Federal Lawsuits with prejudice.

Nothing in this Agreement shall preclude any action to enforce the terms of this Agreement. The Parties hereby agree and acknowledge that the UT Release outlined above constitutes an essential term of the Agreement.

### 4.    **Settlement Payment**

In exchange, within twenty (20) days of the Effective Date, UT agrees to pay in settlement of any and all Claims and Damages which Hubbard has asserted or could currently assert against UT, and those potentially involving UT as a third-party discovery participant, the sum of seven hundred thousand dollars ($700,000.00) (the "Payment") in the manner specified below:

- UT will deliver one check to Hubbard's Counsel in the amount of $107,663.04, less applicable employment taxes including federal withholding, social security, and Medicare, made payable to Thomas K. Hubbard. UT shall issue a W-2 tax form to Hubbard in connection with this check. Hubbard's Counsel agrees to hold this check in trust for Hubbard and provide it to Hubbard via whatever method he and Hubbard deem fit.

- UT will deliver a check to Hubbard's Counsel in the amount of $592,336.96 made payable to Thomas K. Hubbard. UT shall issue a 1099 tax form to Hubbard in connection with this check. Hubbard's Counsel

DocuSign Envelope ID: ADFBE64E-92C3-4ABB-AAAC-223A9SFE9188

agrees to hold this check in trust for Hubbard and provide it to Hubbard via whatever method Hubbard's Counsel and Hubbard deem fit.

Hubbard shall be ultimately responsible for all taxes, if any, including any federal and/or state income taxes, social security taxes, or Medicare taxes owed by him to any taxing authority, in connection with the Payment. Hubbard individually agrees to indemnify and hold UT harmless in any suit, claim, or other proceeding made by any taxing authority for taxes owed by them respectively as a result of the receipt of proceeds of the Payment.

Hubbard shall furnish to UT all information necessary to facilitate the Payment, including a signed W-9 tax form, no later than seven (7) days after the execution of this Agreement.

## 5.    <u>Other Terms</u>

UT further affirms and represents that all graduate students whose dissertations are currently under the advisory of Hubbard will be eligible for financial assistance and any obligations and understandings with respect to such assistance, in place at the time of this Agreement, will be honored by UT in Hubbard's absence.

Within five (5) days of the execution of this Agreement, UT shall place the report issued by Lisa Moore, Phillip Barrish, and Steven Friesen dated March 11, 2020 to Ann Stevens, Dean of Liberal Arts, in Hubbard's personnel file and make it available to him for use as he deems appropriate. A copy of this report is attached hereto as Exhibit B. To the extent Hubbard requires an additional copy, he shall direct his request to UT's Office of the Vice President for Legal Affairs, vpla@austin.utexas.edu. Nothing in this Agreement prevents or precludes UT from withholding other documents in Hubbard's personnel file pursuant to exemptions under the Texas Public Information Act.

## 6.    <u>Dispute Resolution</u>

The Parties agree that, if a dispute arises with regard to the interpretation and/or performance of this Agreement or any of its provisions, and the Parties are unable to resolve that dispute between themselves, before litigation is brought to construe or enforce this Agreement, they will bring the dispute before Eric Galton, Lakeside Mediation, and attempt to resolve the dispute through good-faith mediation. In the event Galton is unwilling or unable to serve as mediator, the Parties will agree on an acceptable alternative.

If after a good faith effort, the Parties cannot resolve the dispute through mediation, the Parties may seek to enforce the agreement, with the prevailing party entitled to reasonable attorney's fees and costs. The Parties understand and agree that this Agreement shall be governed by, construed, and enforced in accordance with and subject to the laws of the State of Texas. The exclusive, mandatory venue for any

legal suit arising out of this Agreement shall be in the District Courts of Travis County, Texas.

## 7. <u>Representations and Warranties</u>

Each Party to this Agreement represents and warrants to the other Parties the following:

    a.    that such Party is adequately represented by competent counsel in connection with the execution and delivery of this Agreement and in any and all matters relating thereto;

    b.    that in executing this Agreement, such Party has relied upon such Party's own judgment and the advice of such Party's own attorneys; that such Party has not been induced to sign or execute this Agreement by promises, agreements, or representations not expressly stated herein; and that such Party has freely and willingly executed this Agreement and expressly disclaims reliance upon any facts, promises, undertakings, or representations made by any other Party or any other Party's attorney prior to the Effective Date of this Agreement;

    c.    that such Party's respective consent to this Agreement was not procured, obtained, or induced by improper conduct or undue influence;

    d.    that after investigation and/or consultation with such Party's attorneys, such Party agrees that this Agreement is fair, reasonable, and supported by good, valid and adequate consideration;

    e.    that such Party understands and agrees to the terms and conditions of this Agreement; and

    f.    that such Party is executing this Agreement in all of the representative capacities described in this Agreement, that such Party has the requisite authority and consent to execute this Agreement in all capacities, and that this Agreement is binding upon such Party.

8.  **Miscellaneous Provisions**

    a.    All representations, warranties, covenants and other obligations of the Parties under this Agreement shall survive the execution and performance of this Agreement.

    b.    The Parties hereto have worked closely together in drafting, negotiating and reviewing this Agreement, and therefore agree that any rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

    c.    This Agreement and its Exhibits contain the entire agreement among the Parties with respect to the subject matter hereof, and no oral statements or prior written materials not specifically incorporated herein shall be effective. No variation, modification, or changes hereof shall be binding on any Party unless set forth in a document executed by all of the Parties.

    d.    This Agreement shall be binding upon and shall inure to the benefit of the Parties.

    e.    Whenever the context of this Agreement so requires, the singular shall include the plural, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include all other genders. All terms defined in this Agreement shall have such defined meanings when used herein. The paragraph headings used herein are for convenience only and shall not be utilized in construing the intent of this Agreement.

    f.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

    g.    Except as provided herein, the Parties agree to bear and pay whatever costs they themselves incurred in connection with their disputes.

    h.    No opinion concerning the tax consequences of this Agreement is being given or will be given by Hubbard's Counsel, UT's Counsel, or UT.

    i.    The Parties agree to execute such other documents necessary to effectuate the terms of this Agreement.

    j.    If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining

DocuSign Envelope ID: ADFBE64E-92C3-4ABB-AAAC-2234A5FE9188

provisions will nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

Signed _____, 2021.

2021-07-05 | 15:43:17 PDT

_Dr. Thomas K. Hubbard_

_____

Dr. Thomas K. Hubbard

Approved as to form:

Signed _____, 2021.

2021-07-07 | 10:35:03 CDT

_Sherrard (Butch) Hayes_

_____

Sherrard (Butch) Hayes
Weisbart Springer Hayes LLP
212 Lavaca Street, Suite 200
Austin, Texas 78701

Approved as to form:

Signed _____, 2021.

2021-07-07 | 11:21:39 PDT

_____

Joe Sibley
Camara & Sibley, LLP
1108 Lavaca St.
Ste 110263
Austin, TX 78701

The University of Texas at Austin                    2021-07-07 | 15:33:54 CDT
                                                     Signed _____, 2021.

_Ann Stevens_
DocuSigned by:
DC90C6F1508243B...
Ann Stevens
Dean of the College of Liberal Arts


Acknowledged and Approved by                         2021-07-07 | 17:16:09 CDT
The University of Texas System                       Signed _____, 2021.


_Daniel H. Sharphorn_
DocuSigned by:
5E2E78B98690449...
Daniel H. Sharphorn
Vice Chancellor and General Counsel                  2021-07-07 | 19:16:01 CDT
                                                     Signed _____, 2021.

Approved as to form:


DocuSigned by:
B016BFC08C114A5...
Amanda Cochran-McCall
Deputy General Counsel and
Deputy Vice President for Legal Affairs
The University of Texas at Austin
P.O. Box R
Austin, Texas 78713

Roy Roscoe
Equal Employment Opportunity Commission ("EEOC")
San Antonio Field Office
5410 Fredericksburg Rd, Ste 200
San Antonio, TX 78229
roy.roscoe@eeoc.gov

Re: Withdrawal of EEOC Charge No.: 451-2020-03555, Dr. Thomas K. Hubbard v. The
University of Texas at Austin

Dear Mr. Roscoe:

I write to withdraw my Charge of Discrimination, 451-2020-03555, against The University of
Texas at Austin because the parties have reached a settlement. As a part of this settlement,
I have released all claims against UT, including, but not limited to, the claims contained in
my current Charge of Discrimination. Because of this, I respectfully request that your office
withdraw my Charge and close this matter fully. To the extent my Charge has been cross-
filed with the Texas Workforce Commission, I also wish to withdraw that Charge as well.

Thank you for your time and consideration.

**\*\*\* Signature block \*\*\***

cc:

Sherrard "Butch" Hayes, Weisbart Springer Hayes, Attorney for Professor Hubbard
SHayes@WSHLLP.com

Adam Arthur Biggs, Assistant Vice President for Legal Affairs, Attorney for The University
of Texas at Austin, adam.biggs@austin.utexas.edu

Texas Workforce Commission, Civil Rights Division, **(NEED E-MAIL ADDRESS)**

EXHIBIT A

March 11, 2020

Ann Stevens
Dean, College of Liberal Arts
University of Texas at Austin
Austin, Texas 78712

Dear Dean Stevens,

You charged us with reviewing syllabi and students' course-instructor surveys for classes taught by
Professor Thomas Hubbard in 2014-15, 2015-16, and fall 2019. The syllabi and student surveys were
made available to us via a Box folder, as was an exam and answer key that Professor Hubbard used in his
fall 2019 class LAT 323-9, Advanced Latin II: Horace, Odes, and Satire.

You asked us to consider whether these specific documents contain evidence indicating that Professor
Hubbard's "classroom environment includes discussion(s) or materials that are not appropriate or not
consistent with his right to and responsibility for academic freedom in the classroom."

As you advised, we consulted University of Texas System Regents Rule 31004 Rights and
Responsibilities of Faculty Members and particularly Section 2.2, Freedom in the Classroom. We also
consulted the "Statement of Principles on Academic Freedom and Tenure" issued in 1940 by the
American Association of University Professors (AAUP), which is widely accepted as our nation's most
authoritative definition of academic freedom and the rights and responsibilities it entails. (UT Regents
Rule 31004, Section 2.2, is based on the AAUP Statement.)

Our careful review of the student surveys, syllabi, and sample exam from the specified classes revealed
no evidence that Professor Hubbard's teaching in these classes exceeded the boundaries allowed by
academic freedom as defined in the University of Texas Regents Rules and the AAUP Statement. In our
judgment, the content of Professor Hubbard's reading assignments, of his statements during class
discussions, and of his sample exam are consistent with his right to and responsibility for academic
freedom.

That said, we were disturbed by the insensitive tone several student surveys report him taking when
discussing rape. We do not think that this question of Professor Hubbard's tone when discussing sexual
violence is best approached through the framework of academic freedom, which, in the context of
teaching, focuses on the materials and ideas an instructor presents to students. Nonetheless, we think that
remediation may be in order here. To that end, we recommend that Professor Hubbard undergo training in
trauma-sensitive pedagogy.

Sincerely yours,

DocuSigned by:

*Phillip Barrish*
Phillip Barrish
2020-03-11 | 18:40:03 CDT

DocuSigned by:

*Steven Friesen*
Steven Friesen
2020-03-11 | 18:52:14 CDT

DocuSigned by:

*Lisa Moore*
Lisa Moore
2020-03-11 | 19:00:29 PDT

EXHIBIT B



## Certificate Of Completion

Envelope Id: C2584CEAA07640E0AA236DA1EECF2A11
Subject: Please DocuSign: Hubbard Report (3.11.20).docx
Source Envelope:
Document Pages: 1
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-06:00) Central Time (US & Canada)

Signatures: 3
Initials: 0

Status: Completed

Envelope Originator:
Phillip Barrish
1 University Station
Austin, TX  78712
pbarrish@eid.utexas.edu
IP Address: 128.62.27.198

## Record Tracking

Status: Original
          3/11/2020 6:34:32 PM

Holder: Phillip Barrish
          pbarrish@eid.utexas.edu

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Lisa Moore<br>moorell@eid.utexas.edu<br>University of Texas at Austin<br>Security Level: Email, Account Authentication (None) | Lisa Moore<br>FE0B771E0FD8460...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 104.54.192.83 | Sent: 3/11/2020 6:39:30 PM<br>Viewed: 3/11/2020 9:00:20 PM<br>Signed: 3/11/2020 9:00:29 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |
| Phillip Barrish<br>pbarrish@eid.utexas.edu<br>University of Texas at Austin<br>Security Level: Email, Account Authentication (None) | Phillip Barrish<br>08BA529AF3B344C...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 128.62.27.198 | Sent: 3/11/2020 6:39:30 PM<br>Viewed: 3/11/2020 6:39:40 PM<br>Signed: 3/11/2020 6:40:03 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |
| Steven Friesen<br>sjf365@eid.utexas.edu<br>Prof.<br>Security Level: Email, Account Authentication (None) | Steven Friesen<br>A5336B59CA91437...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 65.36.80.184 | Sent: 3/11/2020 6:39:30 PM<br>Viewed: 3/11/2020 6:51:29 PM<br>Signed: 3/11/2020 6:52:14 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 3/11/2020 6:51:29 PM<br>    ID: f2640cdd-aefd-4607-af7d-7dc0fc576d60 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

EXHIBIT B