From: Heike Titus <heike@austin.utexas.edu>
Subject: **Follow up**
Date: November 11, 2009 9:36:43 AM CST
To: Stephen White <sawhite@uts.cc.utexas.edu>
▷  1 Attachment, 27.1 KB

Hello Steve,

I have just mailed the attached letter to Tom Hubbard.

Best,
Heike

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Heike Titus
Assistant to the Dean
College of Liberal Arts
GEB 3.220
heike@austin.utexas.edu
voice: 232-6298



COLLEGE OF LIBERAL ARTS
THE UNIVERSITY OF TEXAS AT AUSTIN
──────────────────────────────────────────
*Office of the Dean · Dorothy L. Gebauer Building · 1 University Station G6000 · Austin, Texas 78712-1105*
*(512) 471-4141 · FAX (512) 471-4518*

November 11, 2009

Dr. Thomas K. Hubbard
Department of Classics
1 University Station C3400
Waggener Hall 123
Austin, TX 78712-0308

Dear Tom:

I have now carefully studied your e-mail of September 16, 2009, in which you
propose terms that would make it possible for you to accept early retirement from
the University of Texas at Austin. This is to inform you that I am unable to accept
your proposals for early retirement.

Sincerely,

Randy L. Diehl, Dean
David Bruton, Jr., Regents' Chair in Liberal Arts

Cc: Steve White, chairman, Department of Classics
     Mary Steinhardt, Faculty Ombudsperson

**EXHIBIT 2**



COLLEGE OF LIBERAL ARTS

THE UNIVERSITY OF TEXAS AT AUSTIN

*Office of the Dean • Dorothy L. Gebauer Building • 1 University Station G6000 • Austin, Texas 78712-0579*
*(512) 471-4141 • FAX (512) 471-4518*

August 20, 2009

Tom Hubbard
Department of Classics
C3400

Dear Tom:

This letter responds to the requests made by you in an e-mail that was forwarded to me
by Mary Steinhardt on August 14, 2009.

With respect to your requests:

1.  You requested that a copy of your 8/5/09 response to my July 10 letter be sent to
    all of the parties to which I had distributed copies of my letter. This has been
    done.
    You requested that your letter be placed in your permanent personnel file in
    which the July 10 letter was placed and be attached to the July 10 letter. This has
    been done.

2.  You requested that I release to you, fully and without redaction, all documents
    concerning you which I had consulted prior to composing my July 10 letter, with
    the exception of any documents that are privileged communications between me
    and the Legal Affairs Office and that these documents be clearly identified based
    on which files they were pulled from. You stated that you prefer that I do this
    voluntarily rather than forcing you to place another Open Records request.
    As an Open Records requests triggers certain legal obligations, I am asking you to
    confirm my reading that you are **not** making an Open Records request is correct.
    Once you have confirmed that you are not making an Open Records request, I
    will make available to you all the documents that I am able to release without
    violating FERPA or other confidentiality rules/laws that may apply. All released
    documents will be identified based on which files they were pulled from.

Sincerely yours,

Randy L. Diehl, Dean
David Bruton Jr., Regents' Chair in Liberal Arts

Cc: Steve White, chairman, Department of Classics



COLLEGE OF LIBERAL ARTS

THE UNIVERSITY OF TEXAS AT AUSTIN

*Office of the Dean • Dorothy L. Gebauer Building • 1 University Station G6000 • Austin, Texas 78712-0579*
*(512) 471-4141 • FAX (512) 471-4518*

September 4, 2009

Dr. Thomas K. Hubbard
Department of Classics
1 University Station C3400
Waggener Hall 123
Austin, TX 78712-0308

Dear Tom:

I have now carefully studied your letter of August 16, 2009, in which you propose terms that would make it possible for you to accept early retirement from the University of Texas at Austin.  You suggested this possibility in a meeting with Ombudsperson Mary Steinhardt who subsequently met with me on August 10th. Your letter was in response to an invitation from me (conveyed by Mary Steinhardt) to submit such a proposal.

I regret that the College of Liberal Arts is unable to accept the terms you have offered.  From a budgetary standpoint, they are far in excess of what the College can afford, and meeting them would set an unacceptable precedent for future early-retirement negotiations.

Because you stated in your letter that "the overall financial bottom line represents the absolute minimum" that would be acceptable to you, I will not be able to offer a counterproposal that would be mutually acceptable.

I emphasize that my willingness to entertain an early-retirement proposal should not be construed to suggest that I believe that the "legal or grievance claims against the University or its employees" to which you allude in your letter have merit.

Sincerely,

Randy L. Diehl, Dean
David Bruton, Jr., Regents' Chair in Liberal Arts

Cc: Steve White, chairman, Department of Classics
    Mary Steinhardt, Faculty Ombudsperson

August 16, 2009

Randy Diehl
Dean, College of Liberal Arts

Dear Randy:

I appreciate your taking the time to meet with the Faculty Ombudsperson and the constructive interest you and Steve White both expressed in the possibility of negotiating an early retirement package as a resolution to the problems. Since you invited a proposal from my side, I list the terms that would make it possible for me:

(1). I would commence a 3-year phased retirement in Fall 2009, with half-time teaching, but full pay. I would have no vote or committee assignments in the Classics department, but I would be willing to undertake committee assignments for the College or University.
(2). I would receive a $10,000 mid-year salary equity increase during 2009-10.
(3). I would be named to the currently vacant Robert M. Armstrong Centennial Professorship and have discretionary use of the funds produced by that professorship for the period Fall 2009 to Spring 2012.
(4). I would be allowed to retire as the Robert M. Armstrong Centennial Professor Emeritus after Spring 2012. I will have no need of either an on-campus office or parking space after Spring 2012, but would retain all other privileges normally granted to Emeriti.
(5). During the three-year period 2009-12, I would be given the cooperation of the College and the Development Office in raising funds to promote speakers and conferences in the area of Sexual Diversity Studies.
(6). I would receive a salary of $250,000 for academic years 2010-11 and 2011-12.
(7). I will drop all legal or grievance claims against the University or its employees, will file no further Open Records requests regarding any events or documents prior to the date of the agreement, and will agree to write no further letters of complaint to university administrators concerning events prior to the date of the agreement.

I expect that (6) may prove to be the most difficult point, but it is really quite modest by the standards of most such settlements (usually involving tenured professors who were actually guilty of something specific, rather than victims of the vague accusations and serious due process violations I have experienced). It would cost the University a little more than $350,000 beyond what I would otherwise earn over the next three years, as opposed to the $1.5 million additional (in constant dollars) a professor of my age and salary could expect to

earn if he stays to 70. From an actuarial standpoint, it is to the University's advantage.

You would be wrong to count on my being hired elsewhere, due to the many false and defamatory rumors some colleagues in my department have spread throughout the profession (Classics remains a very small field in the US). Until 2002, when the department's hegemonic faction started all of this libelous nonsense, I frequently got calls from other major universities inviting me to apply for senior positions there (Yale twice, NYU, Illinois). At the last of these, in 2002-3, I was directly told of the rumors that one member of this department was spreading, which resulted in my losing a chairmanship position that would have nearly doubled my salary. I have shown extraordinary patience and forbearance in not pursuing grievance or legal actions years ago. Instead, I trusted naively in the Ombuds process, which has so far yielded little beyond one violated agreement after another.

The amicable settlement I propose would give me the funds necessary to retire at 55 with financial security, would give the hegemonic faction of the Classics department the freedom to pursue its narrow and self-interested agenda without challenge or debate, and would give the University administration the flexibility to reallocate long-term funding out of an antiquated and unambitious department into a newer center of excellence. This gives everyone what they want the most. I am sure you will agree that it would be preferable to the time-consuming and unpleasant options mentioned in (7), which can only lead to even greater turmoil and disharmony both in the department and the College, none of which can enhance the College's ability to compete for funding from the Provost.

Since I would like to begin this arrangement with the coming Fall semester, I would appreciate a prompt response from you whether you believe something along these lines is possible. It goes without saying that some of the details can be negotiated, but the overall financial bottom line represents the absolute minimum I would need to be able to retire fully by Spring 2012.

Sincerely yours,


Thomas K. Hubbard
Professor of Classics



DEPARTMENT OF CLASSICS

THE UNIVERSITY OF TEXAS AT AUSTIN

*1 University Station C3400 · Waggener Hall 123 · Austin, TX 78712-0308*
*(512) 471-5742 · Fax: (512) 471-4111 · http://www.utexas.edu/cola/depts/classics*

College  August 5, 2009

Dean Randy Diehl
College of Liberal Arts

Rec'd    AUG 0 6 2009

Dear Randy:

Refer
Action
Signature          Date

Many thanks for your letter of July 10. I have now had an opportunity to read your letter carefully and discuss it with several colleagues whose judgment I value. As you know, I did not come to you on June 18 to discuss outdated and unproven charges against me, but something far more important, the decline and future of a once-great department.

I am sorry that some in the department have chosen to distract you, at a time of budgetary crisis for the College, by attempting to revive these matters, which have already been resolved under other administrators and are supposed to have been removed from my departmental file (per letter of Faculty Ombudsperson 8/26/05). The facts as related in your letter are incorrect, the date of the only specific incident you mention was 1989, and I have the necessary written evidence (if you wish to see it) to prove that the real ethical transgression and harm to the University in these incidents was on the part of those who were manipulating graduate students and junior faculty to fabricate allegations against me. People can trade charges of "incivility," "wasting the department's time," "repeatedly raising already resolved issues," and the like back and forth until the cows come home. That solves nothing and does not move the College forward.

I personally do not want to be used as the department chair's excuse for resisting needed reforms. Accordingly, I have asked the current Faculty Ombudsperson to approach you with a more constructive proposal that will place my future contribution to the College primarily in arenas other than the Classics department. With the support and encouragement of several wealthy donors, I am currently involved in a very time-consuming fundraising effort that has the potential to bring tangible benefit to the College. These donors are fully aware of the Classics department's past record of obstructing Michael White's efforts and its repeated violation of donor intent. To pull my fundraising effort off in a way that will benefit the University, I need to be free of this department's problems and located in a department that is friendlier to private donors and the faculty who try to work with them. The focus of my fundraising is interdisciplinary in scope, and would not readily fit into a department whose goal over the last few years has been to narrow itself, rather than broaden itself.

I would welcome the opportunity to talk with you further about this project and to work with you constructively on other issues in the future. For example, I am prepared to support any proposal you might wish to make on reducing the language requirement to one year, based on my experience as Classics' language coordinator. Unlike most of my colleagues, I frequently teach first- and second-year Latin; based on that experience, I think that Classics and other language departments would be better off with only a one-year requirement. But to be able to make this argument to other conscientious language faculty, I need to be free from the kind of retaliation I routinely face in Classics.

With best wishes for the College's future,

Thomas K. Hubbard



COLLEGE OF LIBERAL ARTS

THE UNIVERSITY OF TEXAS AT AUSTIN

*Office of the Dean · Dorothy L. Gebauer Building · 1 University Station G6000 · Austin, Texas 78712-0579*
*(512) 471-4141 · FAX (512) 471-4518*

July 10, 2009



Tom Hubbard
Department of Classics
C3400

Dear Tom:

This letter documents our meeting on Thursday, June 18th, where we met to discuss a number of concerns about the Classics Department that you have brought to my attention. Others have come to me as well to express their concerns. You requested to meet with me to ask me what I was going to do about these problems. We talked about various factors that have exacerbated the problems in the department, including faculty members divesting themselves of all participation in departmental matters and protracted, unproductive, and confrontational discussions during meetings and via e-mail. I told you that I have carefully studied relevant documents in the faculty files to familiarize myself with the history of these issues and that I have begun taking steps to address them.

This fall, I will meet with the Classics faculty to talk about my expectations for the department concerning collegiality and academic excellence. I will also be talking about the Department's Code of Faculty Conduct, which was adopted in the spring of 2003, and my insistence that all ethical and professional standards detailed therein will be observed. The record shows how the academic mission of the college and the University were adversely affected when this code was not followed. I have shared some of my thoughts and expectations for appropriate professional conduct with you in our meeting and would like to take this opportunity to expand on these.

I mentioned in our conversation that you tend to write long e-mails stating your opinions and, that, rather than accepting a decision, you will continue to press your point and continue writing about the issue. While I agree that communication requires sufficient detail to allow for assessment and evaluation, eventually a point is reached where any further communication becomes an impediment to departmental processes and decision-making. Furthermore, as we discussed, all communications, whether written or verbal, must be expressed in respectful and professional language. I expect all of the members of our faculty to show professional courtesy and respect for others and to strive to be objective in evaluating the professional judgment of their colleagues.

Recruiting new faculty is one of the most important means of building academic excellence in our departments. I expect that faculty searches will be conducted diligently and consistently with clearly defined selection criteria and procedures for screening and interviewing candidates. To ensure the integrity of this process, only search committee members should be communicating with and contacting the candidates.

The integrity of the instructor-student relationship is crucial to the University's educational mission. It is my expectation that our faculty will treat students in a respectful and professional manner, that professional and personal boundaries are maintained and that there will be no breach of the confidential relationship between a faculty member and a student. The department files contain a statement from a former student who writes that you met with and confronted the student about a negative course instructor evaluation. I expect all members of our faculty to treat any student comments as confidential documents and never to confront students about the contents of course evaluations.

I am committed to working with Department Chair Steve White and the classics faculty to further academic excellence and to improve the sound operation of the department. As stated in the Classics Department Code of Faculty Conduct:

> (a) conduct that requires the chair, members of the staff or committee members to devote inordinate amounts of time to a single issue, particularly if the issue has already been decided
> (b) complaints that are repetitious or harassing
> (c) conduct that reflects poorly on the professional reputation of the department, causing it to lose students or colleagues, or that seriously impedes the free discourse that is basic to intellectual pursuits

are examples of conduct that have impeded the department's functioning in the past. I will fully support the code and Steve White's mandate to seek disciplinary action when appropriate.

Sincerely yours,

Randy L. Diehl, Dean
David Bruton Jr., Regents' Chair in Liberal Arts

Cc: Steve White, chairman, Department of Classics
　　Executive Committee, Department of Classics
　　Steve Leslie, Executive Vice-President and Provost