UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. THOMAS HUBBARD, PhD,<br><br>   *Plaintiff*,<br><br>v.<br><br>SARAH ALLEN BLAKEMORE and<br>JOHN DOES 1-10,<br><br>   *Defendants*. | Case No. 1:20-cv-767 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
SARAH ALLEN BLAKEMORE'S MOTION FOR SANCTIONS**

COMES NOW Dr. Thomas Hubbard, PhD ("***Dr. Hubbard***" or "***Plaintiff***") and files his Response in Opposition ("***Response***") to Defendant Sarah Allen Blakemore's ("***Blakemore***" or "***Defendant***") Motion for Sanctions ("***Sanctions Motion***", [Doc. 36]) and would respectfully show as follows:

### I.   INTRODUCTION AND FACTUAL BACKGROUND

Just after this case began—on the Sunday of Labor Day weekend 2020—Plaintiff's counsel, Mr. Sibley ("***Sibley***"), made an offer to Blakemore's counsel (**Ex. A-1**) to try and avert unnecessary stress to a young woman who had clearly made an error in judgment. His client, Dr. Hubbard, wanted to find out the identities of who else was involved in creating and distributing the defamatory Flyer (**Ex. A-2**), the Johns Does, which he believed would lead to the discovery of who was responsible for committing the violent attack at and near his home and terroristic threats that ultimately force him to leave Austin,

Texas for the State of California. Examples of the violent mob's handiwork—that of the "Popular Women's Movement" ("**PWM**")—are easily accessible on the Internet:[1]



Dr. Hubbard—at that time—did not believe that Blakemore, who came from a notoriously right-wing, but otherwise respectable family, would have been in any way involved with the radical left-wing mob who committed the actual attack. As alleged in his Original Complaint, however, Dr. Hubbard believed that that the libelous Flyer that Blakemore and the John Does had disseminated had "instigated" and "initiated" the subsequent violent attack through the libelous falsehoods. Doc. 1 at ¶ 6.

---

[1] See https://incendiarynewscom.wordpress.com/2019/12/19/austin-insiders-report-ut-sexual-misconduct-meeting-focused-on-repressing-activists/. The website publicizing the PWM's attack on Dr. Hubbard's home, *Incendiary News*, has posted videos of their group marching with the flag of the former Soviet Union, along with large posters of brutal dictators and mass murderers Joseph Stalin and Mao Zedong. See https://incendiarynewscom.wordpress.com.

RESPONSE TO MOTION FOR SANCTIONS                                             2

Rather than agree to disclose information that might lead to the discovery of the identities of the violent mob and, in turn, potentially have Blakemore dismissed from the case, Blakemore's Houston counsel Leonard Meyer ("**Meyer**") instead responded to the offer with a bizarre parochial reprimand for sending an email on a Sunday. Meyer scolded Sibley and pretended to be disturbed from prayer and supplication on the "Sabbath".[2] *See* **Ex. A-1**. Meyer also informed Sibley that he and his firm—in reverence of the common man—would also be deep in observance of Labor Day, which, along with the "Sabbath", they took very "seriously". *See id.* These "serious" observances would delay Meyer in responding to the offer, which would have potentially worked to resolve claims against Blakemore with minimal litigation. *See id.*

Although taken aback by Meyer's pharisaical response and disregard for Jesus's admonition to "do good on the Sabbath" (Luke 6:9) by attempting to give Blakemore an easy way out of her lapse in judgment, Sibley did not further respond and expected further word from Meyer after his religious observances. However, the next communication from Blakemore was her Motion for Summary Judgment ("**MSJ**", Doc. 8), which was filed only three days after Meyer's "Sabbath" epistle. The MSJ moved only for summary judgment on the specious argument that the Flyer—that accused Dr. Hubbard of advocating for the violent rape of children—was entirely opinion. *See id.* Not only was this an odd basis for summary judgment since the argument could have been more expeditiously raised in a FRCP 12(b)(6) motion to dismiss, but it also amateurishly relied on overruled case law

---

[2] Meyer's piety apparently allows for the checking of electronic devices on his mistaken observance of the "Sabbath". The Sabbath, or *Shabbat* in Hebrew, is actually on Saturday, not Sunday. *See, e.g.,* https://en.wikipedia.org/wiki/Sabbath.

RESPONSE TO MOTION FOR SANCTIONS                                                                  3

from the D.C. Circuit instead of seminal Supreme Court controlling authority.  *See* <u>Doc. 9</u> at p. 7, n.14.

Despite these oddities and gaffes, however, Plaintiff and his counsel still did not have any reason to alter their belief that not only was Blakemore not involved with the violent individuals who attacked Dr. Hubbard's home, but that—based on representations by her and her counsel[3] through pleadings filed with the Court—was not aware of who was responsible.  For example, Blakemore represented multiple times in pleadings signed by her attorneys that she had no knowledge of the identities of the John Does.  *See* <u>Doc. 4</u> at ¶ 5; <u>Doc. 15</u> at ¶ 6.  Blakemore also said she had no "contact" with the individuals who attacked Dr. Hubbard's house.  *See id.* at ¶ 20.

But when the truth came out, it was shocking – even by standards observed by political operatives.  Blakemore and her counsel were lying.  They purposefully obstructed and delayed disclosure of the truth about who was involved in the creation and dissemination of the Flyer to let the statute of limitations pass.  **They clearly did so to conceal the fact that Blakemore's father and right-wing politico, Allen Blakemore, was involved in reviewing the Flyer before its distribution.**[4]  This explained why Meyer

---

[3] The statements herein regarding Blakemore's counsel are not directed at Mr. Ross Pringle, Blakemore's local counsel, who was engaged to defend Blakemore's defamation claims by Blakemore's renter's insurance.  **Ex. A-3** at 112:2-7.  Mr. Pringle was professional and ethical during his representation and, unfortunately, was forced to work with the personal Houston attorneys of Blakemore's father, whose questionable conduct in this case was clearly driven by Texas GOP political cronyism.  *Compare* https://www.ethics.state.tx.us/about/commissioners/slovacek.php (Joseph Slovacek ("***Slovacek***") was appointed—ironically—to the Texas Ethics Commission by Lt. Gov. Dan Patrick ("***Patrick***") *with* **Ex. A-3** at 227:20-228:16 (name dropping Patrick and suggesting she could use her family's influence with him to remove former President Fenves) *and* https://harpers.org/archive/2017/03/texas-is-the-future/5/ (referring to Allen Blakemore as "Darth Vader" of GOP Texas politics and Patrick's "favorite" political consultant).  Unsurprisingly, Mr. Pringle did not sign off on Blakemore's frivolous Sanctions Motion, which even raises the question of whether the Sanctions Motion is even procedurally appropriate given that Meyer and Slovacek, the signatories, are only admitted to the W.D. Texas *pro hac vice*.

[4] **Ex. A-3** at 94:5-25.

wanted to indefinitely delay conducting discovery in the case[5] and try and quickly move for summary judgment while pretending to be oblivious to the identities of others involved.[6]  In addition, despite claims to the contrary, Blakemore and her family knew exactly who was responsible for that attack on Dr. Hubbard's home.  In fact, it was Blakemore who introduced the violent PWM to Blakemore's libelous claims against Dr. Hubbard and, but for Blakemore, there is no evidence they would have ever even known of Dr. Hubbard's existence.[7]

These facts only came entirely to light in Blakemore's May 28, 2021 deposition.[8] The deposition was a complete and total disaster for Blakemore, where she was caught lying repeatedly.  For example, Blakemore—clearly coached beforehand to give canned testimony by her father's lawyers—opened the deposition by swearing that she did not believe Dr. Hubbard was a pedophile and never referred to him as a pedophile.[9]  But Blakemore and the Houston attorneys failed to review her own communications, which unequivocally demonstrate that Blakemore did, in fact, believe Dr. Hubbard was a

---

[5] *See* **Ex. A-1**.  At the beginning of the email chain, in response to Mr. Pringle and Mr. Sibley's proposal to hold a Rule 26(f) conference in August, Meyer objects and instead wants to indefinitely delay the Rule 26(f) conference, which triggers the start of discovery.

[6] *See* **Ex. A-3** at 236:23-241:6. Blakemore knew that the John Does had to be either the "Students for Safety" members or those who attacked Dr. Hubbard's home, but nevertheless, in concert with her counsel, lied and pretended to be ignorant of their identities.

[7] **Ex. A-3** at 245:17-248:4; 186:15-187:8; 224:2-224:17. Blakemore believed the PWM responsible for the attack on Dr. Hubbard's home immediately after learning about it in December 2019 by texting "PWM" in response to a friend's text regarding the attack on Dr. Hubbard.

[8] **Ex. A-3.**

[9] *See, e.g.,* **Ex. A-3** at 11:24-13:25l 14:7-17; 182:22-183:17.

pedophile and referred to him as such.[10]  After being caught in her lies, Blakemore apologized to Dr. Hubbard on the record in the deposition for her despicable conduct.[11]

Just after Blakemore's disastrous deposition, on June 2, 2021, Dr. Hubbard and his employment law counsel Sherrard "Butch" Hayes ("*Mr. Hayes*") conducted a mediation with the University of Texas at Austin ("*UT*"), against which Dr. Hubbard had filed an EEOC charge alleging, among other things, discrimination for his sexual orientation.[12] Importantly, the charge also contained allegations that UT had helped to foster a hostile environment against Dr. Hubbard, which included a member of Blakemore's "Students for Safety" group that disseminated the Flyer, Hollie Green ("*Green*"), and also a member of the UT Classics Department, Zoe Elise Thomas ("*Thomas*"), both of whom Dr. Hubbard had also brought suit against.[13]

The situation was dire for UT.  Blakemore's deposition disclosed that Blakemore—using her family's connections—had met with UT Vice President of Legal Affairs Jim Davis ("*Davis*") the morning after distributing the libelous Flyer, given him a copy of the Flyer, and in turn discussed it that same day with former UT President Gregory Fenves ("*Fenves*").[14]  Fenves assured Blakemore "not to worry" about Dr. Hubbard's libel suit.[15]

---

[10] *See, e.g.,* **Ex. A-3** at 209:25-211:2. Blakemore is exposed multiple times in the deposition with her own documents referring to Dr. Hubbard as pedophile in the same time frame as the publication of the Flyer after initially testifying in the deposition that it was never her opinion that Dr. Hubbard was a pedophile. Blakemore and her father also clearly intended the libelous Flyer to create that impression in the minds of the readers, which ultimately resulted in violent mob and the signage they bore declaring Dr. Hubbard as a "PEDOPHILE".  *See* photos *supra*.

[11] **Ex. A-3** at 209:25-211:2.

[12] **Ex. A-4**.

[13] **Ex. A-4** at p. 10.

[14] **Ex. A-3** at 220:6-222:2. Blakemore used one of her father's associates to gain access to Davis. *Id.* at 130:13-131:3.

[15] **Ex. A-3** at 229:8-230:8.

Davis was aware of Blakemore's involvement with the PWM group that attacked Dr. Hubbard's house.[16]  In fact, Blakemore turned "informant" on PWM and tipped off Davis that PWM was planning to storm a luncheon that Fenves was holding for students at UT.[17]  Although Dr. Hubbard cannot disclose the details of discussion at the UT mediation due to mediation privilege, what he can disclose is that, **prior to the mediation, UT and Dr. Hubbard never once discussed resolving Dr. Hubbard's libel claims (including those brought against Blakemore) as part of any settlement with UT and had received no offer of settlement.**[18]  As is evidenced by the Settlement Agreement, Dr. Hubbard agreed to resolve his claims against UT and his libel claims for the sum of $700,000.00, an offer he received **just two (2) business days after the bombshell revelations from Blakemore's deposition debacle.**

In the end, it was the Ninth Commandment—not bearing false witness (Exodus 20:16)—that spelled doom for Blakemore's defense, and which served as the impetus for UT to engage in damage control that would bring about global resolution.  Blakemore and her counsel lied and were caught.  The fact that UT brass were granting Blakemore special privileges and appearing to give a tacit endorsement of her libel made Blakemore's problem UT's problem.

To its great credit, however, UT ultimately did the right thing, took ownership of its responsibilities to Dr. Hubbard, and even went so far as to "buy peace" for the parties who were caught up in Blakemore's attention-seeking libelous crusade against Dr. Hubbard.  However, Green and Thomas have quietly resolved their differences with Dr.

---

[16] **Ex. A-3** at 253:23-254:20; 256:5-16.

[17] *Id.*

[18] **Ex. B**.

RESPONSE TO MOTION FOR SANCTIONS                                                                                     7

Hubbard and are moving on with their lives. Blakemore and her family, however, are unable to accept the fact that Dr. Hubbard was compensated (in part because of the damages she caused) and have rejected the peace that UT bought for her, instead instructing Allen Blakemore's Houston attorneys to file a frivolous Motion for Sanctions under a ridiculous theory that Dr. Hubbard has been lying in wait for 11 years to file litigation against a student to leverage a buyout from UT. In what has become an all-too-familiar pattern among certain political types, the Blakemore family still refuses to accept any culpability for their libel and their lies.

## II. ARGUMENT AND AUTHORITIES

Blakemore's Motion purports to seek sanctions under both the Court's "inherent power" and pursuant to 28 U.S.C. § 1927. Doc. 36 at ¶ 1. For the reasons discussed below, these arguments are completely groundless and should be sanctioned because they were only raised and invented after Blakemore learned of Dr. Hubbard's settlement with UT and only after Dr. Hubbard sought dismissal of this case pursuant to the Settlement Agreement with UT. Prior to this, Blakemore's counsel never made a peep about any supposed "sanctionable" or "vexatious" litigation. **Ex. A** at ¶ 7. In fact, despite having the information Blakemore relies on in her Sanctions Motion, Blakemore previously offered to resolve the case for a payment of $25,000.00 to Dr. Hubbard and each side bearing their own fees. Ex. A at ¶ 8; **Ex. A-6**. Blakemore had to invent frivolous grounds to recover the attorneys' fees paid to the Houston lawyers (her father's lawyers) for filing the botched MSJ when the insurance company would not pay. **Ex. A** at ¶ 7; **Ex. A-5**.

Moreover, further evidence of the frivolity of the Sanctions Motion lies in the fact that it is nearly identical to the Rule 11 Sanctions Motion that Blakemore served on Dr.

Hubbard on July 28, 2021 (*compare* **Ex. A-7** *with* Sanctions Motion), but which was torpedoed by the Court's Order properly recognizing that Rule 11 was moot given that any pleadings complained of were necessarily being dismissed (Doc. 34).  That Order also recognized that there were other theories of recovery of attorneys' fees as a sanction post-dismissal.  *Id.*  A few days later Blakemore's Houston counsel simply cut and pasted "inherent power" and "28 U.S.C. § 1927" into the now obsolete Rule 11 Motion and filed it, even though these are entirely different grounds with different standards.  This further warrants sanctions against Blakemore and her counsel for attempting to "reverse engineer" the Court's Order (Doc. 34) to tease out some frivolous argument for sanctions.

### A. Inherent Power.

The Court has inherent power to sanction a person for certain bad-faith conduct, but because of the "very potency" of a court's inherent powers, the Court must exercise them "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see In re First City Bancorporation*, 282 F.3d 864, 867 (5th Cir. 2002).  For this type of sanction to apply, the Court must make a finding demonstrating that Dr. Hubbard or his counsel subjectively acted with bad faith in some way in this litigation.  *See, e.g., Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224–25 (11th Cir.2017) (finding of subjective bad faith is required, unless attorney's conduct is so egregious that it could only be committed in bad faith); *Wilson v. Citigroup*, 702 F.3d 720, 724 (2d Cir. 2012) (specific finding of bad faith required); *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209 (5th Cir. 1998) (same).

Here, Blakemore's putative basis for sanctions under the Court's inherent power is that this entire suit was supposedly brought for an "improper purpose". Doc. 36 at ¶ 1.

That "improper purpose" is supposedly because Dr. Hubbard wanted to use this and the other libel suits as "leverage" to obtain a buyout of his tenured relationship with UT. The only evidence supporting this claim is that, in 2009, Dr. Hubbard had a dispute with UT over his treatment by UT and the Classics Department and requested a buyout to facilitate his exit from UT. *See* Doc. 36-2. In other words, Blakemore would have the Court believe that Hubbard hatched his scheme to file this suit against Blakemore in 2009, simply waiting for the right moment where a student would defame him, which would give him the opportunity to file a suit against a student to create the "leverage" he needed.

But Blakemore's conspiracy theory is belied by the evidence. First, Blakemore unquestionably defamed Dr. Hubbard, falsely accusing him of advocating for violent child rape and being a threat to the safety of UT students.[19] Further, contrary to Blakemore's specious arguments in the Sanctions Motion, Dr. Hubbard never accused her in the pleading of being part of the physical attack on his home, but rather as being responsible for the libel that incited a mob to commit the attack. Doc. 1 at ¶ 6. This would turn out to be truer than he ever imagined given that, as discussed above, Blakemore was friends with the leader of the group responsible for the attack, knew of their propensity for violence,

---

[19] Dr. Hubbard will not rehash the arguments he has previously raised in his MSJ briefing that demonstrates, contrary to Blakemore's pedestrian attempts to the contrary relying on overruled case law, that the Flyer contains overt and/or implied assertions of fact and are thus actionable libel. *See generally* Docs. 9 and 31. Blakemore's Sanctions Motion glosses over the most egregious aspects of Blakemore's libel–that she accused Dr. Hubbard of advocating for the commission of violent rape and crime against children—by arguing that Dr. Hubbard allegedly "defended" certain person accused of being pedophiles in a letter written by Dr. Hubbard *after* Blakemore published the Flyer. This is like arguing a criminal defense attorney "advocates for child rape" because she might offer legal defense to an accused rapist. Moreover, Blakemore's argument that it is "true" that Dr. Hubbard is "heavily associated" with NAMBLA because one of his works was republished by them is likewise ludicrous for the same reasons that, for example, Friedrich Nietzsche is not "heavily associated with Nazis" simply because some of those organizations or adherents may republish his books or endorse his writings. *See, e.g.,* https://www.vox.com/2017/8/17/16140846/alt-right-nietzsche-richard-spencer-nazism.

and yet never reported her knowledge of these fact to the authorities and withheld them in discovery.

The idea that Dr. Hubbard brought this lawsuit for any other purpose than to vindicate his reputation and to hold those accountable for the libelous Flyer and the violent attack on his home is ludicrous. As the Court can see for itself, Dr. Hubbard had to be escorted from his vandalized home by police with a violent mob—some of which Blakemore knew, texted with, collaborated with, and then turned "informant" on to prevent them from attacking president Fenves and likely embarrassing her father—that led him to leave Austin and suffer intense mental anguish and shame.[20]  When Dr. Hubbard filed the suit, he could not have known that Blakemore had discussed her libelous Flyer and Dr. Hubbard's threat of suit with Jim Davis and former President Fenves, creating the appearance of a tacit endorsement by UT. These facts created a problem for UT, and it was then—and only then—that any discussion of settlement with UT occurred that would encompass the libel claims. See **Ex. B**. In fact, the fact that UT paid the large sum of money it did to settle these claims shows the *strength* of the merit of the libel claims – not their weakness.[21] **As the timing makes clear, it was the disastrous testimony from Blakemore in her deposition potentially inculpating UT that led to the Settlement – not the existence of the lawsuit itself that had already been pending for nearly a year**.

There is no evidence to support Blakemore's specious claims that Dr. Hubbard brought his claims for an improper purpose or without sufficient evidence. This is a frivolous argument and should be rejected. But even if Dr. Hubbard did have some

---

[20] *See* https://www.dropbox.com/sh/aaxjhtobtxqa2q0/AAA8LhSSIJ09dLQdWwJwHjcUa?dl=0.

[21] *See* **Ex. B** (discussing the fact that Dr. Hubbard was paid much more than the statutory caps on his EEOC claims, demonstrating that UT took monetary responsibility for Blakemore's libel).

RESPONSE TO MOTION FOR SANCTIONS                                                                                                  11

subjective motive for suing Blakemore that also related to a desire to achieve a workout with UT, as a matter law, he did not act with an improper purpose because his libel claims had merit.  Sanctions should not be imposed if the lawsuit is nonfrivolous on its face, even if the signer's subjective intent was improper.  *See National Ass'n of Gov't Empls., Inc. v. National Fed'n of Fed. Empls*., 844 F.2d 216, 223 (5th Cir.1988); *see also e.g., Sussman v. Bank of Israel*, 56 F.3d 450, 458–59 (2d Cir. 1995) (when plaintiffs presented objectively reasonable claims, the intent of filing complaint to exert pressure on defendants through negative publicity was not improper purpose).

Accordingly, Blakemore's frivolous "inherent power" argument should be rejected.

**B.  28 U.S.C. § 1927.**

The Court may require an attorney who multiplies the proceedings unreasonably and vexatiously to pay the excess costs, expenses, and attorney fees incurred because of the conduct.  *See* 28 U.S.C. § 1927; *Six v. Generations Fed. Credit Un.*, 891 F.3d 508, 520 (4th Cir. 2018); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008).  Unlike FRCP 11 sanctions, 28 U.S.C. § 1927 sanctions cover only the multiplication of proceedings that prolong the litigation of a case; they do not cover the initial pleading because proceedings cannot be multiplied until a case has been ongoing.  *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008); *see Gust, Inc. v. AlphaCap Ventures*, LLC, 905 F.3d 1321, 1328 (Fed. Cir. 2018); *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir.2010).  Sanctions under this rule are intended to compensate parties for their excess costs and expenses.  *See Six*, 891 F.3d at 520 (§ 1927 sanctions are compensatory, not punitive).  The imposition of attorney fees and costs under 28 U.S.C. § 1927 is reserved for egregious behavior that violates recognized standards of litigation conduct.  *Baker Indus. v. Cerberus*

*Ltd.*, 764 F.2d 204, 208–09 (3d Cir.1985); *see also United Stars Indus. v. Plastech Engineered Prods.*, 525 F.3d 605, 610 (7th Cir. 2008) (§ 1927 sanctions set higher standard than sanctions under FRCPs).

Blakemore's argument for why Mr. Sibley "vexatiously multiplied" the proceedings in this case is nothing short of bizarre. According to Blakemore, he did not sue enough defendants in this case and instead chose to sue them in separate lawsuits. In other words, he "vexatiously multiplied proceedings" by failing to multiply proceedings in this case and instead initiate separate lawsuits against separate defendants for separate libelous publications about Dr. Hubbard. *See* Sanctions Motion at ¶ 5.

Blakemore's argument on this point is so bad, that it almost warrants no response. By not including Green and Thomas in this case—and it is doubtful it would have even been legally appropriate to do so given they each of the women were sued for publishing different statements at different times over different media creating different sets of operative facts—this *necessarily reduced* Blakemore's litigation costs. There were less answers to review, less disclosures, less paper in general. Blakemore provides absolutely no explanation—because she cannot—of how failing to include other defendants in this case was "vexatious" or caused her to incur additional fees.[22]

But more importantly, as discussed above, the reason why the John Does were not named as defendants in this case was because Blakemore and her counsel filed fraudulent pleadings disclaiming any knowledge of who they were, even though Blakemore admitted

---

[22] Section 1927 sanctions are also not available based on arguments alleging a waste of the Court's resources. *See Blue v. U.S. Dept. of Army,* 914 F.2d 525, 548 (4th Cir. 1990). However, as the Court can determine from reviewing its own docket, there was *no activity* in the Green and Thomas cases other than the initial scheduling conference. The only activity in this case—other than the initial scheduling conference—was related to Blakemore's frivolous MSJ and not any filing by Dr. Hubbard.

RESPONSE TO MOTION FOR SANCTIONS                                                                                 13

in deposition that she knew who they were as soon as this suit was filed. Blakemore's Flyer purported to be from a group (suggesting more than one person) called "Students for Safety" ("**SFS**"). **Ex. A-2**. But Blakemore was the only name identified on the Flyer. *See id.* Therefore, these unknown persons were listed as John Does in the suit.[23]

Rather than disclose the identities of these John Does early in the suit—while they could be added within limitations—Blakemore's counsel instead obstructed, filed frivolous pleadings denying knowledge of the John Does, and contrived the now infamous "Sabbath" email that was really just another lie to buy time to allow Blakemore to file her shoddy MSJ in hopes of stopping Dr. Hubbard from discovering Allen Blakemore's involvement as well as the other members of SFS. This would have included Green. By the time Blakemore coughed them up, limitations had already run on the Flyer, a fact that she was aware of from discussions with her friends and counsel who appear responsible for telling her not disclose the John Does identities.[24]

Far from "vexatiously" multiply proceedings, Mr. Sibley attempted to simplify the litigation and even potentially offer Blakemore a way out. **Ex. A-1**. Regrettably, Allen Blakemore's "Rambo" litigators in Houston were too tough for that and, instead, chose to sandbag and trust their own abilities as First Amendment scholars with a specious MSJ. Rather than name the John Does by the deadline to add parties and attempt to use tolling

---

[23] Blakemore repeatedly trumpets statements from Dr. Hubbard to non-party Liv Yarrow ("***Yarrow***") wherein he suggests that she may be a "John Doe" in the suit based on his suspicions that may have encouraged Blakemore. *See* Doc. 36-4. Dr. Hubbard is a non-lawyer who had grown tired of being bullied and lied about. His statements regarding joining Yarrow are in response to Yarrow's statements criticizing Dr. Hubbard for suing Blakemore and informing her that if she was involved in the Flyer that she could be a "John Doe". *See id.* So what? Yarrow was never added as a party because no evidence materialized she was involved in the Flyer. This caused no harm to Blakemore nor did the naming of the John Does, which were never added to the suit. *See* **Ex. A-9**.

[24] **Ex. A-3** at 217:23-218:10; 281:9-282:18 (admitting that her counsel may have told her not to disclose the existence of John Does).

arguments to address the limitations issues, Mr. Sibley and his client decided not to add more parties to the case—which would have included SFS members and Allen Blakemore—so as not to escalate the controversy and "multiply proceedings". *See* **Ex. A-9**.

For these reasons, Blakemore's frivolous argument 28 U.S.C. § 1927 arguments should be rejected.

### C. Blakemore's Requested Relief Demonstrates Frivolity.

Blakemore's Sanctions Motion is nothing more than as an after-the-fact and knee-jerk retaliation designed to punish Dr. Hubbard for succeeding on his claims. This is best underscored by the relief Blakemore requests. Blakemore does not, as she is required to do, attach testimony and attorneys' fees statements demonstrating what fees she supposedly incurred as result of any "bad faith" or "vexatiously multiplied" proceedings. Rather, Blakemore requests disgorgement of the entirety of Dr. Hubbard's settlement amount from UT. Doc. 36 at ¶ 25. Blakemore cites no authority for her request, as there is none that would justify it. This further demonstrates that the Sanctions Motion was brought to harass Dr. Hubbard as it does not even purport to demonstrate what specific harm Blakemore supposedly suffered in the form of attorneys' fees.[25]

### III.   CONCLUSION

The only sanctionable and vexatious multiplication of proceedings that has occurred in this case is on behalf of Blakemore and her Houston counsel. They purposefully withheld information on who was involved in the creation of the Flyer and

---

[25] *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (holding that sanctions under inherent power must be limited to fees and costs attributable to alleged sanctionable conduct); *Six*, 891 F.3d at 520 (§ 1927 sanctions are only for specific excess fees/costs incurred because of vexatious conduct).

RESPONSE TO MOTION FOR SANCTIONS                                                                                      15

filed fraudulent pleadings disclaiming knowledge of the identities of who else was involved, even though Blakemore's own statements reveal she knew their identities. In the Sanctions Motion, they pretend that Dr. Hubbard frivolously accused Blakemore of being personally involved in the attack on his house even though the Complaint only brings claims for libel against Blakemore and the John Does, which Dr. Hubbard believed provoked the mob attack. Blakemore's Blakemore admitted in deposition that both her and her attorneys understood that the John Does were those who were involved with the Flyer – not the attack on the house.[26] Therefore, they made knowingly false representations in the Sanctions Motion.

But even if Dr. Hubbard did accuse Blakemore of acting in concert with the violent mob who attacked his home, he was right. Blakemore befriended them, informed them about Dr. Hubbard, and staged her "protest" of Dr. Hubbard that same day the violent mob stormed the class of another UT professor. She knew immediately upon learning of the attack on Dr. Hubbard that it was them. Blakemore turned a violent mob onto Dr. Hubbard through the Flyer. He was called a "pedophile" by multiple persons and peers. "But for" Blakemore, Dr. Hubbard's home would have never been attacked and he would likely still be living in Austin.

Despite her attempts to distance herself from the term in her deposition, Blakemore's private communications with her inner circle endorsed this defamation, repeatedly referring to Dr. Hubbard as a "pedophile". Once all of these revelations came to light, UT took responsibility and made things right. However, as Blakemore disclosed to friend via text message, "I f***ing hope this turns out with me beating a pedophile,

---

[26] **Ex. A-3** at 217:23-218:10; 281:9-282:18.

otherwise my rep is f****d". The Blakemores simply cannot stand that Hubbard "won" by being properly compensated for his injuries. Rather than take responsibility, or at least go on with their lives in peace (being thankful that UT bought that peace), the Blakemores have to "win" and have to preserve their "rep". As a result, they filed their frivolous Sanctions Motion to continue to harass Dr. Hubbard and cause him to incur fees.

Blakemore's frivolous Motion should be denied and the Court should consider *sua sponte* whether to sanction Blakemore and her counsel for the misconduct outlined herein.

Dated: August 20, 2020.

                                                         Respectfully submitted,

                                                         CAMARA & SIBLEY LLP

                                                         /s/ Joseph D. Sibley
                                                         Joseph D. Sibley
                                                         State Bar No. 24047203
                                                         sibley@camarasibley.com
                                                         Camara & Sibley LLP
                                                         1108 Lavaca St
                                                         Suite 110263
                                                         Austin, TX 78701
                                                         Telephone: (713) 966-6789
                                                         Fax: (713) 583-1131

                                                         WEISBART SPRINGER HAYES LLP
                                                         212 Lavaca Street, Suite 200
                                                         Austin, Texas 78701
                                                         512.652.5780
                                                         512.682.2074 fax

                                                         By:    /s/ Sherrard "Butch" Hayes
                                                         Sherrard (Butch) Hayes
                                                         State Bar No. 00784232
                                                         shayes@wshllp.com
                                                         Rachel O. Mathisen
                                                         Texas Bar No. 24102255
                                                         rmathisen@wshllp.com

                                                         **ATTORNEYS FOR PLAINTIFF**

RESPONSE TO MOTION FOR SANCTIONS                                                       17

## CERTIFICATE OF SERVICE

 This is to certify that on this the 20th day of August, 2021, a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record via ECF.

       /s/ Joe Sibley_____
       Joe Sibley