UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DR. THOMAS HUBBARD, PhD.** §<br>  *Plaintiff,* § § § | |
| v. § | CA NO. 1:20-cv-00767-RP |
| § | |
| **SARAH ALLEN BLAKEMORE; and** § <br> **JOHN DOES 1 – 10,** § <br>  *Defendants*. § | **JURY DEMANDED** |

## Defendant Sarah Allen Blakemore's Reply to Plaintiff's Response in Opposition to Defendant Sarah Allen Blakemore's Motion for Sanctions

Sarah Allen Blakemore ("Defendant" or "Blakemore") files this Reply to Plaintiff's Response in Opposition to Defendant Sarah Allen Blakemore's Motion for Sanctions. In support, Blakemore would respectfully show the court as follows:

1. Plaintiff Thomas Hubbard ("Plaintiff" or "Hubbard") has now explicitly admitted that his accusation that Blakemore was the "instigator and initiator" of the attack on his house was completely baseless and made without even a good faith belief that facts may be developed that would support this grave accusation of inciting a felonious assault on his property. Hubbard's Response begins by describing an email exchange that occurred on September 6, 2020, "just after this case began," and he proceeds to admit that "Dr. Hubbard—at that time—did not believe that Blakemore. . . would have been in any way involved with the radical left-wing mob who committed the actual attack." *Plaintiff's Response* at p. 2.

2. Following an unprofessional, bigoted attack on Defendant's Counsel's religious beliefs[1], Hubbard then proceeds to again state that "Plaintiff and his counsel still did not have any reason to alter their belief that not only was Blakemore not involved with the violent individuals who attacked Dr. Hubbard's home, but that—based on representations by her and her counsel through pleadings filed with the Court—was not aware of who was responsible." Despite having admitted that he did not have "any reason" to believe Blakemore was involved in the violent attack, Hubbard never took any measures to amend his pleadings to remove the claim that Blakemore and the John Does were the "instigators and initiators of these events through libelous and slanderous statements made of and concerning Dr. Hubbard."

3. Hubbard now attempts to walk back what was a very pointed accusation by claiming that he did not actually mean that Blakemore directed the attack on his house, but his choice of words was deliberate and Hubbard's feigned ignorance as to the meaning of his own words should be paid no credence.[2] Hubbard recognized that he had no compelling case based on the contents of the flyer, which expressed an unactionable opinion, and made a calculated decision to "gin up" his claims by conflating the publication of a harmless flyer with a violent criminal assault on his property. Now, after collecting a sizable settlement from the University of Texas in exchange for

---

[1] Mr. Sibley's ad hominem attack on the undersigned counsel through his libelous and inappropriate labeling of the undersigned counsel's respectful request to not impose deadlines on the Sabbath (Sunday), as hypocritical and frivolous, is the kind of discourse that has no place in the practice of law or this United States District Court, and should be disregarded. Indeed, by his reference to *Shabbat* in the footnote to his distasteful argument, Mr. Sibley further offends proper decorum by showing his bias against the Jewish faith. The irony is that the undersigned is not just actively engaged in the practice of law, but at the time of these events was beginning second year in seminary studies at Dallas Theological Seminary, which does impose on its students, including the undersigned, a fundamental respect for, among other things, the fourth commandment described in the book of Exodus. Mr. Meyer acknowledges that it is his obligation to forgive Mr. Sibley's bad behavior, but it should nonetheless be noted as a wholly improper argument.

[2] Merriam Webster defines "instigate" as to "goad or urge forward," "provoke" and notes that "instigate definitely implies responsibility for initiating another's action and often connotes underhandedness or evil intention." Hubbard may be a Greek scholar, but it is not credible that he is ignorant of his native tongue. The accusation that Blakemore initiated and instigated this assault was intended to portray her as someone who acted with intent and malice in bringing about the attack.

dismissing the false claims against Blakemore, Hubbard has confessed that he never had any reason to believe there was any direct relationship between Blakemore and the assailants.

4. Hubbard, completely divorced from reality, now asserts in his response that "Blakemore and her family knew exactly who was responsible for that attack on Dr. Hubbard's home." *Plaintiff's Response* at p. 5. Hubbard cites to page 236 of Blakemore's deposition, perhaps expecting the Court would not actually review her testimony, which includes the statement that she knows a woman, Patricia, in the Popular Women's Movement but "I don't know that they made the assault on Hubbard's house" and that nobody involved in the flyer she prepared could have been the assailants because "nobody worked on the flyer with me." **Plaintiff's Exhibit A-3** at 237. Again, in the very same testimony cited by Hubbard, Blakemore states that she had no personal experience with the Popular Women's Movement and her assumption that they may have been behind the attack on Hubbard's house was speculation fueled by her knowledge of videos she had seen of other incidents. **Plaintiff's Exhibit A-3** at p. 246. There is nothing here to suggest that Blakemore was "pretending to be oblivious to the identities of others involved" or that "Blakemore and her family knew exactly who was responsible for the attack." Just the opposite.

5. Hubbard recklessly accused Blakemore of orchestrating an attack on his house to bolster what were otherwise pedestrian claims that he could have no realistic hope of recovering on. The statements in Blakemore's flyer have been shown to either consist of well-supported opinions or statements of fact that Hubbard has been called out for lying about, e.g. Hubbard claimed he had no association with the North American Man-Boy Love Association, but admitted through his testimony that he has attended their meetings, maintained a decades-long relationship with one or more members, and published his "scholarship" on the benefits of sexual relationships between men and young boys through a NAMBLA publishing outfit.

6. Hubbard next proceeds to state that *just after* Blakemore's deposition, he participated in a mediation with the University of Texas to discuss settlement of the EEOC claim he had brought against the University. It is no coincidence that this mediation piggy-backed off of Blakemore's deposition. Hubbard does not even pretend otherwise. He characterizes Blakemore's deposition as "disastrous" and then brags that the "situation was dire for UT." Hubbard then emphasizes that the settlement with UT was reached "just two business days after" Blakemore's deposition. Hubbard's attorney in the action against UT further notes in his affidavit that the settlement *exceeded* the statutory caps invoked by Hubbard, underscoring that the excessive settlement would not have been obtained without the benefit of the lawsuit against Blakemore.

7. Hubbard portrays Blakemore's Motion for Sanctions as a "conspiracy theory," but has laid bare for this court additional circumstantial evidence from which it can reasonably conclude that Hubbard improperly brought and maintained a lawsuit against Blakemore that Hubbard has admitted included allegations he never even believed. Hubbard has admitted that he leveraged what he perceived as a problematic deposition against Blakemore in his negotiations with UT to obtain a greater settlement than that which is even available under the applicable EEOC statutes. Hubbard even says the quiet part out loud: "the timing makes clear, it was the disastrous testimony from Blakemore in her deposition potentially inculpating UT that led to the Settlement. . ." *Plaintiff's Response* at p. 11.

8. Hubbard states that he was not "lying in wait" for an opportunity to use a frivolous lawsuit against a student to leverage the retirement package he had been trying to legally extort from UT for a decade. That much is true. This was a "crime" of opportunity. Hubbard saw an opportunity to falsely claim Blakemore had instigated a mob attack on his house and then leveraged that opportunity to extort $700,000 out of UT.

9. Later in his response, Hubbard again connects the pieces, concluding that UT's decision to "engage in damage control" was what ultimately brought "about global resolution." *Plaintiff's Response* at p. 7. The "damage" that had to be controlled was all a result of Hubbard's long-running campaign to pressure the university into paying him an exorbitant sum to go away. It did not work 10 years ago. It worked this time because of significant media coverage Hubbard invited by falsely alleging that the daughter of a prominent Republican instigated a left-wing mob to attack his home.

10. Hubbard's EEOC complaint against the university by itself would not garner so much as a sentence in the press. But a story about a professor suing a student protesting his advocacy of pederasty, who is also accused of instigating a violent attack on his house. . . that is a powder keg. Hubbard knew this. And he lit the fuse. He may not have been "lying in wait" for Blakemore, but he did not wait to exploit an opportunity to rush to the courthouse and file a lawsuit for use as leverage in his ultimate, longstanding goal to pressure UT into paying him a sizable amount to go away.

11. The Court has inherent power to sanction Hubbard for his abuse of the legal system. He has admitted that he never suspected that Blakemore was behind the attack on his house. He has mischaracterized her testimony to suggest otherwise, but Blakemore has admitted nothing more than that she suspected that a group she has no direct experience may have been behind the attack because she had seen videos of similar incidents. Hubbard nevertheless continued to maintain this allegation against Blakemore because he knew these salacious accusations would cause "damage" to UT and that it would pay him a lot of money to "control" it.

12. Hubbard has stopped just short of admitting that he had an improper purpose in bringing this lawsuit and the Court is fully authorized to conclude from the circumstantial evidence,

including Hubbard's own admissions, that Hubbard exploited the lawsuit against Blakemore for the improper purpose of leveraging a settlement out of UT.

13. Blakemore respectfully requests this Court order Hubbard to pay $100,000 in sanctions to Blakemore or such amount as it deems appropriate.

Respectfully Submitted,

**HOOVER SLOVACEK LLP**

By: //s// *Joseph O. Slovacek*
Joseph O. Slovacek
Texas State Bar No. 18512300
Leonard J. Meyer
Texas State Bar No. 13993750
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Tel: (713) 977-8686
Fax: (713) 977-5395
slovacek@hooverslovacek.com
meyer@hooverslovacek.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of September 2021, a true and correct copy has been served by electronic service on the following attorneys, pursuant to the Texas Rules of Civil Procedure.

Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEY FOR PLAINTIFF**

//s// *Joseph A. Slovacek*
Joseph A. Slovacek