# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **DR. THOMAS HUBBARD, PH.D.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No.  A-20-CV-00767-RP** |
| | § | |
| | § | |
| **SARAH   ALLEN   BLAKEMORE,** | § | |
| **AND JOHN DOES 1-10,** | § | |
| *Defendants* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Sarah Allen Blakemore's Motion for Sanctions

Dkt. 36, and all related briefing. After reviewing these filings and the relevant case

law, the undersigned issues the following report and recommendation.

## I.      BACKGROUND

Defendant Sarah Allen Blakemore[1] moves for sanctions against Plaintiff

Thomas Hubbard, Ph.D., who dismissed his suit against her. She asserts that

Hubbard sued her for the improper purpose of pressuring the University of Texas to

settle his age discrimination claims. Blakemore asserts that Hubbard received a

$700,000.00 settlement agreement with the University, and that the terms of that

agreement required him to dismiss his claims against Blakemore, which he has done.

Blakemore maintains that Hubbard's claims against her were frivolous and brought

---

[1] Blakemore identifies herself as "the daughter of a prominent Republican" in her pleadings.
Dkt. 38, at 5.

in bad faith, and requests that the undersigned award her sanctions pursuant to its "inherent power" and pursuant to 28 U.S.C. § 1927. Blakemore requests that she recover her attorneys' fees as sanctions. Hubbard responds that Blakemore's motion is frivolous, and in return requests sanctions for the costs of responding to it.

Hubbard's underlying suit against Blakemore is a defamation suit. In his Complaint, Dkt. 1, he alleged that she published and circulated a flyer to multiple third parties in and around the University of Texas, as well as Twitter, asserting various statements which Hubbard maintains are false. The statements include that Hubbard:

- has been "advocating for pederasty (pedophilia) for as long as he has taught at the University of Texas";

- "used his position to further a community of individuals hoping to prey on underaged boys";

- "in his academic writing" Hubbard "describes physical relationships between men and young boys as 'proper learning experiences'";

- taught a course called the "Mythology of Rape" that was banned at the University of Texas after one semester; and

- "is heavily associated with the North American Man/Boy Love Association ('NAMBLA')," which Blakemore described as "formerly the world's largest pedophile activist group" and that Hubbard is on the list of associated individuals on the NAMBLA Wikipedia page.

The flyer in issue called for Hubbard's removal and states that:

> an individual who advocates for violent crime against teen boys has no business teaching the leaders of tomorrow. It is clear that the University of Texas does not have its students' safety, health, and welfare in mind .... We refuse to stand by while this man uses his status to promote pedophilia.

Dkt. 1-1. Additionally. Hubbard asserted Blakemore slandered him in an interview she gave to the Austin American-Stateman.  Hubbard argued that these statements qualify as defamatory, are false, and have damaged his reputation. He also alleged he suffered damages as a result of Blakemore's statements when his home was vandalized and the words "CHILD RAPIST" spray-painted on it. He alleged this caused him fear and forced him to relocate to California. In her defense, Blakemore argued that the statements in the flyer, Twitter, and to the media were true or substantially true, and that they were also a matter of opinion. Dkt. 4.

## II.      LEGAL STANDARD

When courts consider a motion for attorneys' fees, the "basic point of reference" is "the bedrock principle known as the 'American Rule': each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683 (1983)). The parties do not dispute that there is no contractual or statutory basis for a fee award in this case. Blakemore requests fees in the form of a sanction.

A federal court has the inherent power to shift fees to sanction a party that has abused the judicial process via vexatious litigation. *NASCO, Inc. v. Calcasieu Tel. & Radio*, 894 F.2d 696, 703-04 (5th Cir. 1990), aff'd sub nom., *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (recognizing court's inherent authority to award attorneys' fees to sanction bad-faith litigation); *see also Carroll v. Jaques Admiralty L. Firm*, 110 F.3d 290, 293 (5th Cir. 1997) (recognizing exercise of inherent power when rules

are not "up to the task"). Particularly, a court may employ its inherent power to award a party reasonable attorneys' fees when another party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46.

"But this inherent power must be exercised with restraint and discretion." *Hunting Energy Servs. LP v. Inter-Mountain Pipe & Threading Co.*, 242 F. App'x 257, 260 (5th Cir. 2007) (per curiam) (citation and quotation marks omitted). Accordingly, "[a] court should invoke its inherent power to award attorneys' fees only when it finds that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Id.* (citation and quotation marks omitted).

Under § 1927, the Court may assess attorneys' fees and costs against an attorney "who has unreasonably multiplied the proceedings in a case." *Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x 756, 760 (5th Cir. 2005) (per curiam) (citation omitted). Before imposing § 1927 sanctions, the Court must ensure that the attorney "engage[d] in unreasonable and vexatious conduct." *Id.* (quotation marks omitted) (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). A finding of unreasonable and vexatious conduct "requires evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court," *id.* (citations and quotation marks omitted), "independent of a showing that the claims pursued were baseless." *Hencinski v. Austin Com., L.P.*, No. 3-05-CV-2368-D, 2006 WL 325764, at *2 (N.D. Tex. Feb. 13, 2006). An attorney may not be sanctioned under § 1927 for mere negligence. *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995).

## III.    DISCUSSION

The undersigned has reviewed the exhibits attached to Blakemore's motion and finds them inadequate to impose sanctions against Hubbard or his attorneys pursuant to the Court's inherent powers. Blakemore's motion for sanctions is based largely on her apparent belief that Hubbard's case against her and two other University of Texas students was brought merely to pressure the University of Texas to settle Hubbard's age discrimination suit against it. As evidence, she relies on the fact that Hubbard requested a large payout to settle a previous suit with the University several years ago, which it declined, and that dismissal of Hubbard's claim against her and two other students were included in his agreement to settle with the University.

Blakemore's suspicions do not rise to the level of evidence required for the undersigned to find that Hubbard's litigation against her was vexatious, brought in bad faith, or oppressive. Hubbard has presented evidence that part of his EEOC Charge included a sexual orientation discrimination claim and that he asserted that the University helped foster a hostile work environment against Hubbard, including the dissemination of the flyer by Blakemore and others.  Dkt. 37-4. Additionally, Hubbard has submitted evidence that Blakemore testified that she met with the University's Vice President of Legal Affairs Jim Davis the morning after distributing the flyer and gave him a copy, and also discussed the flyer with President Greg Fenves who told Blakemore "not to worry" about Hubbard's suit.  Dkt. 37-3. Hubbard has submitted evidence to the Court explaining why the University included

settlement of Hubbard's claims against Blakemore in its settlement agreement, and those reasons are unrelated to his previous age discrimination suit, but show the University's desire to minimize its own exposure, unknown to Hubbard at the time he filed the suit, if the suit against Blakemore continued. Blakemore's citation of the settlement agreement as "evidence" of Hubbard's bad faith in making claims against her and using her as a "bargaining chip" in his settlement is simply conjecture on her part, and unsupported by any evidence.

Blakemore asserts that Hubbard's claims against her are improper because the flyer and statements he complains of qualify as an expression of Blakemore's opinions and/or contain truthful statements.  In essence she asks the undersigned to assess the evidence and determine if Hubbard's claims against her and her defenses have merit. The undersigned finds that Hubbard's claims, on their face, are not frivolous and that determination of their potential merit would be the province of a jury after a trial, and not appropriate based on the limited evidence before the undersigned. Regardless, Hubbard's pleadings and claims do not rise to the level of bad faith.

Additionally, Blakemore makes much of Hubbard's claims against various John Does. Hubbard's Complaint states that after publication of the alleged defamatory statements, his house was attacked, and he cites this attack as the basis of his mental anguish and emotional distress. Dkt. 1, at 7. Blakemore asserts that Hubbard admitted that he never believed that she was working in concert with the individuals that vandalized his house, and that this "admission" shows his John Doe

claims are vexatious. However, despite Blakemore's contentions, Hubbard did not plead that Blakemore personally acted to cause the vandalism of his home, but that her statements motivated their violence.  Additionally, Hubbard has submitted evidence that Blakemore knew who attacked Hubbard's home immediately afterward, and had contacts with that group.  Dkt. 37-3. Additionally, the flyer in issue was purportedly published by a group called "Students for Safety" while Blakemore was the only individual named on the flyer. Dkt. 37-2. Hubbard and his counsel had logical reasons for naming John Does in his suit in conjunction with his defamation claims. Blakemore has not submitted evidence supporting her claim that Hubbard's John Doe claims were brought for an improper purpose or in bad faith.

With regard to Blakemore's claims pursuant to § 1927, Blakemore complains that the defamation suits filed against two other individuals for other statements made at other times students show Hubbard's desire to needlessly multiply the proceedings and increase expenses to the defendants when he could have brought a single suit. The undersigned finds that no rule requires Hubbard to bring his claims against three different individuals in one suit in this instance. Moreover, the Defendants in the three suits could have moved to consolidate the suits and did not. And, Blakemore has failed to explain how Hubbard's choice to sue three individuals separately in any way increased her litigation costs. Hubbard's counsel did not act in bad faith in filing separate suits. This argument is without merit.

The undersigned finds that Hubbard's suit was not brought in bad faith or for improper purposes, it is not frivolous, and that Blakemore is not entitled to sanctions.[2]

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court Defendant Sarah Allen Blakemore's Motion for Sanctions Dkt. 36 is **DENIED**. **IT IS FURTHER ORDERED** that this cause of action is **REMOVED** from the docket of the undersigned and **RETURNED** to the docket of the Honorable Robert Pitman.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District

---

[2] Hubbard requests that the Court sua sponte impose sanctions on Blakemore for her sanctions motion. The undersigned finds that the parties' best interests are served by getting off the sanctions merry-go-round, and declines to award sanctions to Hubbard.

Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985);

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED December 20, 2021.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE